IRVING HEALTHCARE
SYSTEM, Relator,

v.

The Honorable David K. BROOKS,
Judge, Respondent.

Mike KINCAID, Tom Permetti, Robert
Stone, M.D., and Michael Waldron,
M.D., Relators,

v.

The Honorable David K. BROOKS,
Judge, Respondent.

Nos. 95-0474, 95-0596.

Supreme Court of Texas.

Argued Oct. 11, 1995.

Decided July 12, 1996.

Frank Shor, Karin A. Marshall, Carrollton, for relator in No. 95-0596.

Lea F. Courington, M. Steve Nagle, Lori V. Thomas, Russell W. Schell, Amy Witherite, Dallas, for relator in No. 95-0474.

Lea F. Courington, Lori V. Thomas, M. Steve Nagle, Russell W. Schell, Amy Witherite, Debra Trawick, Tom M. Thomas, Dallas, for respondent.

Justice OWEN delivered the opinion for a unanimous Court.

The issue in this case is whether documents and communications relating to proceedings of medical peer review committees are protected from discovery in a suit for damages when there is a claim that false information was supplied to the committees with malice. The trial court ruled that the documents at issue were discoverable, and the parties objecting to production seek mandamus relief. Because we conclude that some of the documents are protected from discovery under section 5.06 of Texas Revised Civil Statute article 4495b and section 161.032 of the Texas Health and Safety Code, we conditionally grant a writ of mandamus.

I

Dr. Herbert Kasnetz applied for staff privileges at four Dallas area hospitals. Some years earlier, Kasnetz had been a member of the medical staff at Irving Healthcare System, and the hospitals to which he was applying for privileges made inquiries to Irving Healthcare. Dr. Tom Dickey, a member of both the Medical Executive Committee and the Membership and Credentials Committee at Irving Healthcare, sent various forms and letters in response. Kasnetz alleges that Dickey intentionally and maliciously supplied

false information, thereby damaging or destroying Kasnetz's ability to gain admittance to the medical staffs of the hospitals to which he applied. Kasnetz sued Dickey for libel, slander, "intentional infliction of mental anguish," and interference with business relations. Kasnetz later joined Irving Healthcare as a defendant and added a claim of conspiracy.

Kasnetz served Irving Healthcare with a subpoena duces tecum before joining it as a party, requesting that it produce all documents in its possession that related to Dr. Kasnetz. Kasnetz also noticed the depositions of Mike Kinkaid, Tom Permetti, Robert Stone, and Michael Waldron, four physicians who at the relevant time period were staff members at Medical Arts Hospital (collectively, the "Medical Arts Doctors"), one of the hospitals at which Kasnetz had applied for privileges. Subpoenas duces tecum attached to the deposition notices requested that the Medical Arts Doctors produce all documents (1) concerning or relating to Dr. Kasnetz, or (2) relating to any communications Dickey may have made pertaining to Kasnetz. In separate motions, Irving Healthcare and the Medical Arts Doctors requested protective orders, claiming that the documents Kasnetz sought were privileged pursuant to section 5.06 of the Texas Medical Practice Act, codified as Texas Revised Civil Statute article 4495b; sections 161.031–161.033 of the Texas Health and Safety Code; and section 11137 of the federal Health Care Quality Improvement Act of 1986, codified as sections 11101–11152 of chapter 42 of the United States Code.[1] The Medical Arts Doctors appeared for their depositions, but refused to answer questions concerning the existence or substance of their communications concerning Kasnetz.

Both Irving Healthcare and the Medical Arts Doctors submitted documents responsive to Kasnetz's requests to the trial court for an in camera inspection. The trial court denied the motions for protective orders and ordered production of the documents. The court also ordered the Medical Arts Doctors

to respond to the questions they had declined to answer in their depositions. In a letter to all parties regarding these rulings, the trial court stated that it felt "constrained" to follow the decision in *McAllen Methodist Hospital v. Ramirez*, 855 S.W.2d 195 (Tex.App.—Corpus Christi 1993, orig. proceeding), which held that information obtained by a medical peer review committee in connection with initial credentialing is not privileged under either section 5.06 of the Medical Practice Act or section 161.032 of the Health and Safety Code. 855 S.W.2d at 199.

Irving Healthcare and the Medical Arts Doctors have sought mandamus relief from this Court in separate proceedings. Dickey first requested relief from the court of appeals, while the Medical Arts Doctors did not. Generally, this Court will not consider a petition for writ of mandamus where relief has not been sought from a court of appeals. Tex.R.App.P. 121(a)(1). However, in view of the ruling of the court of appeals on Dickey's petition and the interrelation of these proceedings, we consolidated these cases for oral argument in the interest of judicial economy. These proceedings were also consolidated for argument with two other original proceedings that raised similar issues. Our separate opinion in the latter two cases is issued today. *Memorial Hosp.—The Woodlands v. McCown*, 927 S.W.2d 1 (Tex.1996).

## II

■ The threshold question is whether the initial credentialing process of a "medical peer review committee" within the meaning of section 5.06 of article 4495b or a "medical committee" within the meaning of section 161.032 of the Texas Health and Safety Code is confidential and is subject to the privileges from discovery afforded under those statutes. This question was answered in the affirmative in *Memorial Hospital—The Woodlands*, 927 S.W.2d at 3. We held that there was no basis under these statutes for drawing a distinction between proceedings of a medical peer review committee concerning the clinical privileges of a physician already on staff

---

1. The pertinent provisions of section 5.06 of article 4495b and sections 161.031–161.033 of the Texas Health and Safety Code are contained in a separate appendix to this opinion because of their length.

and proceedings on an initial application for staff privileges. *Id.* at 3–7.

The remaining question presented in this case is whether records of and communications to a medical peer review committee are discoverable in a suit for damages when a plaintiff alleges that communications to a committee were made with malice. We conclude they are not, absent waiver as provided in section 5.06(j) or the assertion of the causes of action enumerated in section 5.06(g). The provisions of section 5.06 expressly delineate and limit the circumstances under which the records of and communications to a peer review committee may be accessed. The statute does not provide an exception for the kinds of claims asserted in the suit before us. We further conclude that the records and proceedings of a medical committee are similarly protected under section 161.032 of the Texas Health and Safety Code. We do not reach the question of whether the documents and communications at issue would be privileged pursuant to 42 U.S.C. § 11137.

We first consider section 5.06 of article 4495b.

## III

### A

There are two intertwined but distinct protections extended to the peer review process under section 5.06 article 4495b. The first is protection from discovery of the records and proceedings of and communications to a medical peer review committee. *See* TEX.REV.CIV.STAT.ANN. art. 4495b, § 5.06(g),(j), (s)(3) (Vernon Supp.1996). The second is a qualified immunity from civil liability. *See id.* § 5.06(*l*), (m), (t). *See also* Creech, Comment, *The Medical Review Committee Privilege: A Jurisdictional Survey,* 67 N.C.L.REV. 179, 179–80 (1988) (noting that the majority of peer review protection statutes have the two-fold purpose of affording immunity from liability for committee members participating in the peer review process in good faith and of protecting the proceedings, records, and material considered by a peer review committee from disclosure).

The provisions of section 5.06 providing *immunity* from civil liability draw the line at malice. Art. 4495b, § 5.06(*l*),(m), (t). However, it does not follow that an allegation or even proof of malice that would negate a qualified immunity negates the separate *discovery* exemption under the statute. The extension of civil immunity and the exemption of matters from discovery are related but distinct.

Kasnetz argues that plaintiffs who claim they have been libeled or slandered in the initial credentialing process and who are able to present a prima facie case of malice are entitled to obtain the documents and communications surrounding that process. Any other construction of the statute, Kasnetz asserts, would prevent discovery of facts directly related to elements of a claim recognized by article 4495b. Kasnetz's argument has some inherent appeal, but the statute cannot be construed as he urges. Section 5.06 may well make proof of any cause of action more difficult, but it nevertheless expressly forecloses the avenue of discovery sought in this case.

The privileges and immunities created by section 5.06 are extensively defined and carefully crafted. The straightforward language of section 5.06 provides several explicit exceptions to the rule of nondisclosure of peer review proceedings, records, and communications. The causes of action asserted by Kasnetz are not among them. For example, the statute provides that if a court makes a preliminary finding that a medical peer review committee's proceedings, records, or communications are relevant to an anticompetitive action or a civil rights proceeding, they are not confidential. Art. 4495b, § 5.06(g). Noticeably absent from the statute is a similar provision for a libel action in which the plaintiff claims malice. Nor does the statute explicitly exclude from its confidentiality provisions any of Kasnetz's other causes of action.

In cases other than anticompetitive or civil rights actions, the statute evidences an intent to allow disclosure of confidential records, proceedings, or communications only at the option of the peer review committee or a party who has participated in the peer review

process. Art. 4495b, § 5.06(j). A peer review committee must waive the privilege of confidentiality in writing. *Id.* If participants in the peer review process are named as defendants in a civil action as a result of participating in peer review, they may use otherwise confidential information in their defense. If a defendant does choose to use such confidential information, then the plaintiff in that action may disclose records, proceedings, or communications in rebuttal. *Id.* But the statute makes clear that "[a]ny person seeking access to privileged information must plead and prove waiver of the privilege." *Id.*

Section 5.06 of article 4495b does not provide an exception to its confidentiality provisions whenever a plaintiff presents a prima facie case of malice. Read as a whole, the statute reflects the Legislature's conscious decision to allow an affected physician to bring claims against those who participate in the peer review process maliciously and without good faith, but nevertheless to maintain the confidentiality of the peer review process. That choice is a logical one. If a litigant could overcome the barrier to discovery by merely alleging malice, the privilege would be substantially emasculated. Requiring a prima facie showing of malice adds little protection. The overarching purpose of the statute is to foster a free, frank exchange among medical professionals about the professional competence of their peers. The Legislature recognized the chilling effect that would be engendered by enfeebling confidentiality.

The Legislature has drawn a careful balance between the competing policy considerations of ensuring confidentiality for effective peer review and the scope of discovery in suits bringing legally cognizable claims. Courts should not disturb that balance or graft additional exceptions onto the statute absent constitutional concerns.[2] We agree that,

> [o]nce a state has made the policy decision to afford privileged status for certain hospital records, the legislature and the courts should not undermine the policy objectives

by circumventing or weakening the privileged status with exceptions not mandated by constitutional considerations or the long-run interests of justice. Nothing is worse than a half-hearted privilege; it becomes a game of semantics that leaves parties twisting in the wind while lawyers determine its scope.

Creech, *supra,* at 181–82. *See also Holly v. Auld,* 450 So.2d 217, 220–21 (Fla.1984) (credentialing committee reports sought by plaintiff alleging defamation in the credentialing process are privileged and not subject to discovery); *cf. Shelton v. Morehead Memorial Hosp.,* 318 N.C. 76, 347 S.E.2d 824, 828–29 (1986) (purposes of statute prohibiting discovery of medical review committee records and material considered or produced by a medical review committee would be "severely undercut" if statute were construed to permit discovery every time a plaintiff claimed that a hospital knew or should have known that a doctor on its staff was incompetent).

Kasnetz's argument that the privilege makes the task of proving his cause of action more difficult is equally applicable to other suits against a hospital or health-care provider such as a suit for medical malpractice. But the statute is express on this point:

> (3) In no event may … reports and records received, maintained, or developed by the board, by a medical peer review committee, … or by a health-care entity be available for discovery or court subpoena or introduced into evidence in a medical professional liability suit arising out of the provision of or failure to provide medical or health-care services, or in any other action for damages.

Art. 4495b, § 5.06(s)(3). *See also Brownwood Regional Hosp. v. Eleventh Court of Appeals,* 927 S.W.2d 24, 26–27 (Tex.1996); *Gustafson v. Chambers,* 871 S.W.2d 938, 949 (Tex.App.—Houston [1st Dist.] 1994, orig. proceeding) (in medical malpractice action, documents relating to complaints filed with the State Board of Medical Examiners were protected from discovery under section 5.06(s) of article 4495b).

---

**2.** Kasnetz has raised no state or federal constitutional challenges to article 4495b or to sections 161.031 and 161.032 of the Health and Safety Code.

There unquestionably is friction in this legislative scheme. It recognizes on the one hand that communications made to a medical peer review committee may be actionable, and on the other, forecloses some avenues of discovery of those communications. It may be possible that in some instances, the privilege from discovery in article 4495b could effectively bar proof of a medical practitioner's claim that a participant in the peer review process acted maliciously or without good faith. However, the terms of the statute do not mandate that result. There are several means by which confidential information may be disclosed to an affected physician. Such disclosure has occurred in this case: Kasnetz is in possession of two letters written by Dickey to two of the four hospitals at which Kasnetz applied for privileges.

■ The statute does not prohibit discovery from alternative sources. For example, a medical peer review committee may have obtained and reviewed a copy of a letter from a physician, but that document is not thereby clothed with a privilege if its author or recipient share it with individuals or entities that do not come under the umbrella of article 4495b. Or, a medical committee may review documents that are within the public domain. *See McGee v. Bruce Hosp. Sys.*, 312 S.C. 58, 439 S.E.2d 257, 260 (1993) (information that is available from a source other than the committee does not become privileged simply by being acquired by the review committee); *Cruger v. Love*, 599 So.2d 111, 114 (Fla.1992) (if the applicant obtains a document from a source that is not within the scope of the privilege, the document is not privileged). Further, routine business records of a health-care entity such as a patient's medical records do not become privileged and are not shielded from discovery simply because a medical peer review committee has reviewed or considered them.

However, the source of discovery cannot be the peer review committee or any other entity or individual included within the protections of section 5.06, except of course where there has been a waiver of the privilege, or where the hospital or physician possesses the documents in a nonprivileged capacity, such as the custodian of a patient's medical records. Rather, a party must seek the documents and communications from a nonprivileged source. Section 5.06 expressly provides that all *communications to* and *proceedings of* a medical peer review committee are confidential and protected from discovery. Art. 4495b, § 5.06(g), (j). A litigant should not be able to discover through a back door the substance of the proceedings of a peer review committee and what that committee had before it in arriving at its decisions. Similarly, deposition questions inquiring about communications to a peer review committee and what the committee considered are objectionable because that information is included within "all proceedings" of and "all communications made to" a medical peer review committee. *Id.*

■ Section 5.06 unquestionably restricts physicians' sources of information concerning peer review actions that affect them. However, a physician who is the subject of the peer review process does have certain statutory rights. For example, the federal Health Care Quality Improvement Act of 1986 requires that adequate notice and a hearing be given to a physician when there has been a proposal that a "professional review action" be taken against the physician. 42 U.S.C. § 11112(a)(3) (1994). This statutory protection is applicable to a denial of clinical privileges. 42 U.S.C. § 11151(9), (10). A companion Texas statute requires a medical peer review committee to provide an affected physician a written copy of a recommendation of the committee and a copy of its final decision, including a statement of the basis for the decision, if the "committee takes action that could result in censure, suspension, restriction, limitation, revocation, or denial of membership or privileges in a health-care entity." Art. 4495b, § 5.06(i). Kasnetz is entitled to this documentation. We note, however, that a hospital's provision of such documents to an affected physician does not waive the confidentiality of the information as to other persons or entities. *Id.* ("disclosure of confidential peer review committee information to the affected physician . . . shall not constitute waiver of the confidentiality provisions" of section 5.06). Section 5.06(r) further allows a court to expunge a report or complaint from

the records of the State Board of Medical Examiners if the report or complaint was made in bad faith. Art. 4495b, § 5.06(r).

## B

■ Kasnetz alleges that Dickey's letters or communications to members of the medical peer review committees are not privileged under article 4495b because they were made outside the scope of Dickey's authority as a member of Irving Healthcare's credentials committee. Kasnetz argues that in communicating information directly to the various health-care entities considering Kasnetz's application for privileges, Dickey circumvented Irving Healthcare's internal bylaws, rules, or regulations regarding responses to inquiries from other peer review committees. Even assuming that Dickey did act outside the scope of his authority as a member of Irving Healthcare's credentials committee, Kasnetz's position is insupportable.

The statute does not require that an individual communicating information to a peer review committee must be acting within the scope of his or her authority as a member of a credentialing committee. Section 5.06 of article 4495b not only contemplates that "individuals" will communicate information to a medical peer review committee, but also grants qualified immunity to any "person" if the communication results in a decision adverse to the physician under scrutiny:

> (m) A *person*, health-care entity, or medical peer review committee, that, without malice, participates in medical peer review activity or furnishes records, information, or assistance to a medical peer review committee or the board is immune from any civil liability arising from such an act.

Art. 4495b, § 5.06(m) (emphasis added). Reading additional requirements into the statute would drastically alter its scope and severely hamper its purpose, as well as deprive a medical peer review committee of sources of information it may need to make informed decisions. Practitioners and academics who have worked, studied, or associated with a particular physician, but who were not affiliated with a hospital peer review committee, would be unable to report information or concerns about the physician with any expectation of confidentiality.

■ Kasnetz contends that Dickey waived any privilege otherwise applicable to his written communications to the hospitals at which Kasnetz had applied for staff privileges because Dickey placed a copy of the documents in the files of *Irving Healthcare's* peer review committee. Irving Healthcare did not have a request by Kasnetz for staff privileges before it when it or Dickey communicated the information Kasnetz claims is libelous. Once again, the express language of the statute resolves the issue. The privilege from discovery under article 4495b is not restricted to communications to a medical peer review committee during the course of a specific investigation or an ongoing proceeding. *See* art. 4495b, § 5.06(g), (j), (s)(3). Further, even a "gratuitous" communication to a peer review committee about the qualifications of a physician or the quality of health care provided by that physician is within the scope of section 5.06. *But see Jordan v. Fourth Court of Appeals,* 701 S.W.2d 644, 648 (Tex.1985) (construing former article 4447d and holding that documents gratuitously submitted to a committee or that have been created without committee impetus and purpose are not protected). Such a communication would be consistent with the obligation of a physician or peer review committee to report to the State Board of Medical Examiners if, in the opinion of those reporting, there is a threat to the public welfare. *See* art. 4495b, § 5.06(d). Further, Dickey was a member of Irving Healthcare's Credentials Committee. Certainly, the Irving Healthcare committee is entitled to retain a copy of communications its members have with other peer review committees without waiving the privilege.

## IV

■ The petitioners rely on section 161.032 of the Texas Health and Safety Code as a separate basis for objecting to the discovery of documents and communications that relate to the denial of staff privileges to Kasnetz. Section 161.032 provides in relevant part: "The records and proceedings of a medical committee are confidential and are

**20**

not subject to court subpoena." Tex. Health & Safety Code § 161.032(a). As noted in *Memorial Hospital—The Woodlands*, 927 S.W.2d at 5, the statutory definition of "medical committee" is broad. *See* Tex. Health & Safety Code § 161.031. That definition encompasses a medical peer review committee, including one that determines whether a physician initially will be granted clinical privileges. *Memorial Hosp.—The Woodlands*, 927 S.W.2d at 5. The records and proceedings of a medical committee that relate to initial credentialing are not business records within the meaning of subsection (c) of section 161.032, and therefore do not lose their privileged character under that section of the Health and Safety Code. *Id.* at 7. Kasnetz maintains that the privilege under section 161.032 of the Code should be inapplicable if malice is alleged or, alternatively, if a prima facie showing of malice is made. Kasnetz points to the section of the Health and Safety Code immediately following section 161.032, which states:

§ **161.033. Immunity for Committee Members**

A member of a medical committee is not liable for damages to a person for an action taken or recommendation made within the scope of the functions of the committee if the committee member acts without malice and in the reasonable belief that the action or recommendation is warranted by the facts known to the committee member. Tex. Health & Safety Code § 161.033.

As with section 5.06 of the Medical Practice Act, the privilege from discovery under section 161.032 and the qualified immunity from liability under section 161.033 are related, but distinct. The statute does not provide that the privilege is lifted or becomes inapplicable if an action or recommendation of a committee member was malicious. To engraft an exception onto section 161.032 for cases in which malice was alleged would substantially undermine the privilege. That decision is for the Legislature, not this Court.

To the extent that the documents and communications at issue in this case are "proceedings and records of a medical peer review committee," they are confidential and not subject to discovery in this suit unless the privilege is waived under section 5.06 of article 4495b, or the documents or communications are available from another, nonprivileged source.

## V

### A

█ The documents that Irving Healthcare claims are privileged can be grouped into two categories. The first consists of documents that pertain to Kasnetz's tenure on Irving Healthcare's medical staff, including an initial credentialing file and documents pertaining to subsequent peer review investigations. The initial credentialing file includes minutes and records of the hospital committees that considered Kasnetz's application and documentation in support of the application, such as inquiries about Kasnetz to outside sources and the responses.

The affidavits of Dickey and of the Medical Staff Coordinator at Irving Healthcare support Irving Healthcare's claim of privilege under section 5.06 of article 4495b regarding these documents. Dickey avers that he was a member of the Medical Executive Committee at Irving, which was authorized by approved bylaws to review the credentials of all applicants for staff membership and to make recommendations regarding membership, as well as to take all reasonable steps to provide for competent performance by the members of its staff, including corrective or review measures. Dickey's affidavit states that responsibilities of the Medical Executive Committee are in furtherance of the hospital's goal of improving patient care and treatment. Dickey notes that the Membership and Credentials Committee apprises the Medical Executive Committee of matters regarding staff membership and necessarily exchanges relevant information concerning applicants' qualifications with other institutions.

The affidavit of Irving's Medical Staff Coordinator provides further support that the documents at issue are privileged. She states that the Membership and Credentials Committee has broad responsibility under the Medical Staff Bylaws to review the credentials of applicants seeking staff privileges and to evaluate the performance of and treat-

ment provided by potential staff members, in furtherance of the hospital's goal of improving patient care. She outlines the initial credentialing process and the documentation required by the hospital in support of an application, and details the review process for physicians already on the hospital staff who seek reappointment. Finally, she states that all the documents maintained in the credential files are confidential and accessible only to committee members.

■ The second category of documents submitted to the trial court consists of inquiries regarding Dr. Kasnetz from hospitals at which Kasnetz had applied for privileges, responses from Irving Healthcare or its medical or administrative staff, and supporting documentation. Both Dickey and Sarah Maddox, the Medical Staff Coordinator at Irving Healthcare, provided affidavits that support the claim of privilege as to these documents. Dickey confirms in his affidavit that Irving Healthcare, in furtherance of the goal of improving patient care and treatment, responds to requests for information from other health-care institutions through the members of its Membership and Credentials Committee and through its Medical Staff Coordinator, who assists the committee. He outlines the process through which these responses take place. Dickey swears that he provided written information regarding Kasnetz in response to inquiries from various health-care entities or their credentialing committee members or agents. Finally, Maddox's affidavit states that pursuant to its deliberative functions, the committee keeps and reviews copies of inquiries or complaints regarding each physician who was or is on its staff.

As we noted in section III(A) of this opinion, Kasnetz is entitled to written copies of any recommendations or final decisions of Irving Healthcare's medical peer review committees that could result in censure, suspension, restriction, limitation, revocation, or denial of membership or privileges in a health-care entity under section 5.06(i) of article 4495b. The trial court did not err in ordering the production of such documents.

■ Nor do section 5.06 of article 4495b and section 161.032 of the Health and Safety

Code preclude physicians from obtaining copies of documents they provided to or received from a peer review committee. Although communications to a medical peer review committee are privileged from discovery by third parties under the statutes, a physician may compel production of his or her own direct communications with the committee. The provision of such information to the physician does not "waive" the otherwise confidential nature of the communications; accordingly, third parties are not entitled to discover that information from the physician. The trial court did not err in ordering Irving Healthcare to produce to Kasnetz copies of any direct communications between its hospital committees and Kasnetz.

■ However, Irving Healthcare's affidavits otherwise provide ample support that all other documents it tendered to the trial court are protected from discovery under section 5.06 of article 4495b and section 161.032 of the Health and Safety Code. A party seeking to prevent the discovery of privileged communications is without an adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992). Mandamus is appropriate under these circumstances.

### B

Kasnetz issued subpoenas to four individual physicians who were on staff at Medical Arts Hospital seeking all documents concerning Dr. Kasnetz and any communications Dickey may have had pertaining to Kasnetz. (Although the subpoenas were directed to these individuals rather than to the hospital itself, Kasnetz filed a motion to compel documents from Medical Arts Hospital. The trial court nonetheless issued an order compelling production of documents from the Medical Arts Doctors.) The Medical Arts Doctors also request relief from the trial court's order requiring them to answer certain deposition questions.

The record forwarded to this Court is incomplete. We do not have the original copies of the documents that the Medical Arts Doctors submitted to the trial court, nor do we have a complete record of the deposition questions at issue. Accordingly, mandamus

relief is not appropriate based on the current state of the record. We are confident, however, that the trial court will no longer feel compelled to follow the decision in *McAllen*, and will reconsider its ruling in light of this opinion.

We conditionally grant Irving Healthcare's petition for writ of mandamus in part. We direct the trial court to vacate its order requiring Irving Healthcare to produce all the documents it tendered for in camera inspection and to conduct further proceedings consistent with this opinion.

## APPENDIX

### MEDICAL PRACTICE ACT, Article 4495b:

Sec. 1.03.   (a) In this Act:

. . . .

(6) "Medical peer review committee" or "professional review body" means a committee of a health-care entity, the governing board of a health-care entity, or the medical staff of a health-care entity, provided the committee or medical staff operates pursuant to written bylaws that have been approved by the policy-making body or the governing board of the health-care entity and authorized to evaluate the quality of medical and health-care services or the competence of physicians, including those functions specified by Section 85.204, Health and Safety Code, and its subsequent amendments. Such a committee includes the employees and agents of the committee, including assistants, investigators, intervenors, attorneys, and any other persons or organizations that serve the committee in any capacity.

. . . .

(9) "Medical peer review" or "professional review action" means the evaluation of medical and health-care services, including evaluation of the qualifications of professional health-care practitioners and of patient care rendered by those practitioners. The term includes evaluation of the merits of complaints relating to health-care practitioners and determinations or recommendations regarding those complaints. The term specifically includes evaluation of:

(A)  accuracy of diagnosis;

(B) quality of the care rendered by a health-care practitioner;

(C) reports made to a medical peer review committee concerning activities under the committee's review authority;

(D) reports by a medical peer review committee to other committees or to the board as permitted or required by law;  and

(E) implementation of the duties of a medical peer review committee by its members, agents, or employees.

. . . .

Sec. 5.06   (a) The provisions of the Health Care Quality Improvement Act of 1986 (Public Law No. 99–660) apply to a professional review action taken by a professional review body in this state on or after the effective date of this Act.

. . . .

(d) Any medical peer review committee in this state, any physician licensed to practice medicine or otherwise lawfully practicing medicine in this state, any physician engaged in graduate medical education or training, or any medical student shall report relevant information to the board relating to the acts of any physician in this state if, in the opinion of the medical peer review committee, physician, or medical student, the physician poses a continuing threat to the public welfare through the practice of medicine. The duty to report under this section shall not be nullified through contract.

. . . .

(g) Except as otherwise provided by this Act, all proceedings and records of a medical peer review committee are confidential, and all communications made to a medical peer review committee are privileged. If a judge makes a preliminary finding that such proceedings, records, or communications are relevant to an anticompetitive action, or a civil rights proceeding brought under Chapter 42, U.S.C.A.1983, then such proceedings, records, or communications are not confidential to the extent they are deemed relevant.

(h) Written or oral communications made to a medical peer review committee and the records and proceedings of such a committee

may be disclosed to another medical peer review committee, appropriate state or federal agencies, national accreditation bodies, or the state board of registration or licensure of this or any other state.

(i) Disclosure of confidential peer review committee information to the affected physician pertinent to the matter under review shall not constitute waiver of the confidentiality provisions provided in this Act. If a medical peer review committee takes action that could result in censure, suspension, restriction, limitation, revocation, or denial of membership or privileges in a health-care entity, the affected physician shall be provided a written copy of the recommendation of the medical peer review committee and a copy of the final decision, including a statement of the basis for the decision.

(j) Unless disclosure is required or authorized by law, records or determinations of or communications to a medical peer review committee are not subject to subpoena or discovery and are not admissible as evidence in any civil judicial or administrative proceeding without waiver of the privilege of confidentiality executed in writing by the committee. The evidentiary privileges created by this Act may be invoked by any person or organization in any civil judicial or administrative proceeding, unless the person or organization has secured a waiver of the privilege executed in writing by the chairman, vice-chairman, or secretary of the affected medical peer review committee. If under Subsection (o) of this section a medical peer review committee, a person participating in peer review, or any organization named as a defendant in any civil action filed as a result of participation in peer review may use otherwise confidential information in his or her own defense, then a plaintiff in such a proceeding may disclose records or determinations of or communications to a medical peer review committee in rebuttal to information supplied by the defendant. Any person seeking access to privileged information must plead and prove waiver of the privilege. A member, employee, or agent of a medical peer review committee who provides access to otherwise privileged commu-

nications or records in cooperation with law enforcement authorities in criminal investigations is not considered to have waived any privilege established under this Act.

. . . .

(l) A cause of action does not accrue against the members, agents, or employees of a medical peer review committee or against the health-care entity from any act, statement, determination or recommendation made, or act reported, without malice, in the course of peer review as defined by this Act.

(m) A person, health-care entity, or medical peer review committee, that, without malice, participates in medical peer review activity or furnishes records, information, or assistance to a medical peer review committee or the board is immune from any civil liability arising from such an act.

. . . .

(o) A medical peer review committee, a person participating in peer review, or a health-care entity named as a defendant in any civil action filed as a result of participation in peer review, may use otherwise confidential information obtained for legitimate internal business and professional purposes, including use in its or his own defense. Such a use does not constitute a waiver of the confidential and privileged nature of medical peer review committee proceedings.

. . . .

(s)(3) In no event may records and reports disclosed pursuant to this article by the board to others, or reports and records received, maintained, or developed by the board, by a medical peer review committee, or by a member of such a committee, or by a health-care entity be available for discovery or court subpoena or introduced into evidence in a medical professional liability suit arising out of the provision of or failure to provide medical or health-care services, or in any other action for damages.

. . . .

(t) The following persons are immune from civil liability:

(1) a person reporting to or furnishing information to a medical peer review committee or the board in good faith;

(2) a member, employee, or agent of the board, a member, employee, or agent of a medical peer review committee, a member, employee, or agent of a medical organization committee, or a medical organization district or local intervenor who takes any action or makes any recommendation within the scope of the functions of the board, committee, or intervenor program, if such member, employee, or agent acts without malice and in the reasonable belief that such action or recommendation is warranted by the facts known to him or her; and

(3) any member or employee of the board or any person who assists the board in carrying out its duties or functions provided by law.

## TEXAS HEALTH AND SAFETY CODE

### § 161.031. Medical Committee Defined

(a) In this subchapter, "medical committee" includes any committee, including a joint committee, of:

(1) a hospital;

(2) a medical organization;

(3) a university medical school or health science center;

(4) a health maintenance organization licensed under the Texas Health Maintenance Organization Act (Chapter 20A, Vernon's Texas Insurance Code), including an independent practice association or other physician association whose committee or joint committee is a condition of contract with the health maintenance organization; or

(5) an extended care facility.

(b) The term includes a committee appointed ad hoc to conduct a specific investigation or established under state or federal law or rule or under the bylaws or rules of the organization or institution.

### § 161.032. Records and Proceedings Confidential

(a) The records and proceedings of a medical committee are confidential and are not subject to court subpoena.

(b) The records and proceedings may be used by the committee and the committee members only in the exercise of proper committee functions.

(c) This section and Section 5.06, Medical Practices Act (Article 4495b, Vernon's Texas Civil Statutes), do not apply to records made or maintained in the regular course of business by a hospital, health maintenance organization, medical organization, university medical center or health science center, or extended care facility.

### § 161.033. Immunity for Committee Members

A member of a medical committee is not liable for damages to a person for an action taken or recommendation made within the scope of the functions of the committee if the committee member acts without malice and in the reasonable belief that the action or recommendation is warranted by the facts known to the committee member.