In re Wise Regional Health Systems f/k/a Decatur Community Hospital 

(comment: 1) 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH 

NO. 2-04-095-CV

IN RE WISE REGIONAL HEALTH SYSTEMS                     RELATOR

F/K/A DECATUR COMMUNITY HOSPITAL

------------

ORIGINAL PROCEEDING

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Relator 
Wise Regional Health Systems f/k/a Decatur Community Hospital (the “Hospital”) 
seeks mandamus relief from the trial court’s March 15, 2004 letter ordering it to produce the credentialing files of two physicians.  Because we conclude that the Hospital adequately proved that the files are privileged and protected from discovery by section 160.007
 of the occupations code
, 
we conditionally grant the writ of mandamus.

I.  BACKGROUND

In December 2002, the sixteen-year-old daughter 
of real party in interest Kathi Brittain 
died of heart failure thirty-six hours after she was admitted to the Hospital. 
 Brittain and Brett Myron Gentry, who both are real parties in interest in this proceeding (“RPIs”), 
sued the Hospital and the girl’s treating doctors and nurses for medical malpractice.  As the suit progressed, RPIs requested “[a]ll written agreements that exist” between the Hospital and each of the two defendant doctors, Charles Tibbels, M.D. and Roger Leaton, M.D.  In its response to RPIs’ discovery request, the Hospital asserted various privileges, including the medical peer review committee privilege contained in chapter 160 of the occupations code.
  
Tex. Occ. Code Ann.
 § 160.007 (Vernon 2003).  
RPIs then moved to compel discovery.  

The Hospital filed a response to RPIs’ motion to compel in which it asserted that RPIs’ request for “all written agreements” sought information regarding the physicians’ credentialing files and that the files were privileged from discovery.  The Hospital included with its response an affidavit from 
Lynn Holt, Quality Management Director for the Hospital
, 
stating that the Hospital’s credentialing files contained confidential information submitted to the Hospital as part of its peer review process and that the Hospital had not waived any privilege applying to the credentialing files.
 
 Attached to the affidavit were the Hospital’s bylaws, medical staff rules and regulations, and quality assessment plan.

At the hearing on RPIs’ motion to compel, 
the Hospital explained that it had an agreement with each doctor regarding the specialties that the doctor would practice at the Hospital and that these agreements were included within 

the credentialing and peer review files that the Hospital kept on each doctor.  
The Hospital also directed the trial court to its filed response to RPIs’ motion to compel
 in support of its claim of privilege as to the credentialing files
.  
After an 
in camera
 review, the trial court concluded that the credentialing files were not privileged and ordered the Hospital to produce the files to RPIs.  The Hospital then filed this petition for writ of mandamus
.

II.  LAW AND APPLICATION TO FACTS

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion and there is no adequate remedy by ordinary appeal.  
In re Colonial Pipeline Co.
, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding); 
Walker v. Packer
, 827 S.W.2d 833, 840-42 (Tex. 1992) (orig. proceeding).  A party does not have an adequate remedy by appeal when an appellate court cannot cure a trial court's erroneous discovery order. 
 Arlington Mem'l Hosp. Found., Inc. v. Barton
, 952 S.W.2d 927, 929 (Tex. App.—Fort Worth 1997, orig. proceeding).  An appellate court cannot cure the error when privileged information that materially affects the rights of the aggrieved party
 is produced pursuant to a trial court’s erroneous order. 
 Walker
, 827 S.W.2d at 840; 
Arlington Mem'l
, 952 S.W.2d at 929. 
 
A trial court has no discretion in determining what the law is or in applying the law to the facts; 
therefore, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ.  
Walker,
 827 S.W.2d at 840. 

The medical peer review committee privilege protects records or determinations of, or communications to, 
a medical peer review committee 
unless they are made in the regular course of business or the privilege has been waived. 
 
Tex. Occ. Code Ann.
 § 160.007(e); 
Tex. Health & Safety Code Ann
. § 161.032(f) (Vernon Supp. 2004); 
Arlington Mem'l
, 952 S.W.2d at 929.  T
he party asserting the privilege has the burden of proving that the privilege applies to the information sought
. 
 
Arlington Mem'l
, 952 S.W.2d at 929. 
 Because the nature and extent of the medical peer review privilege is a question of law, 
see Brownwood Reg’l Hosp. v. Eleventh Court of Appeals
, 927 S.W.2d 24, 27 (Tex. 1996) (orig. proceeding), 
a clear failure by the trial court to apply the privilege correctly will constitute an abuse of discretion, 
see Walker,
 827 S.W.2d at 840.

The documents at issue in this original proceeding are contained in the doctors’ credentialing and peer review files, and the Hospital submitted the affidavit of Holt
 to establish the applicability of the privilege and the documents themselves for 
in camera
 review.
  RPIs challenge the Hospital’s assertion of the medical peer review committee privilege on various grounds, and we will address each in turn.

A.  Proving the Privilege

Without citation to authority, RPIs argue 
that the Hospital 
did not satisfy its burden of proving that the privilege applies because it did not refer the trial court to Holt’s affidavit at the hearing on RPIs’ motion to compel 
or present any live testimony
.  The statute establishing the medical peer review committee privilege does not require live testimony; in fact, an affidavit is the usual device used by parties asserting the privilege to establish that it applies to the information sought.  
See Arlington Mem’l
, 952 S.W.2d at 929.  When a party requests a hearing on a claim of privilege, the opposing party must produce evidence supporting the claim of privilege through “testimony presented at the hearing 
or
 affidavits served at least seven days before the hearing or at such other reasonable time as the court permits.”  
Tex. R. Civ. P.
 193.4(a) (emphasis added).

Here, 
the 
Hospital attached 
Holt’s affidavit to its response to RPIs’ motion to compel and filed it eight days before the hearing.  RPIs filed written objections to the affidavit on the day of the hearing, but the record does not reflect that RPIs obtained a ruling on their objections. 
 At the hearing, the Hospital repeatedly asserted its position that the credentialing files were privileged.  The Hospital also reminded the trial court that it had filed a response to RPIs’ motion to compel that addressed the privilege issue along with a supporting affidavit from its quality assurance director.  Because the Hospital timely served its affidavit as required by rule 
193.4(a), filed the affidavit with the trial court, and brought the affidavit to the court’s attention at the hearing, Holt’s affidavit provides competent evidence establishing the Hospital’s claim of privilege.  
See, e.g., In re Osteopathic Med. Ctr.
, 16 S.W.3d 881, 883 (Tex. App.—Fort Worth 2000, orig. proceeding) (considering relator’s affidavit in a mandamus proceeding challenging trial court’s order on motion to compel, where 
affidavit was filed 
in response to the motion to compel before the hearing
 on the motion
)
.

B.  Sufficiency of Supporting Affidavit

RPIs also argue that Holt’s affidavit is global and conclusory
, rendering it insufficient to support the Hospital’s claim of privilege
.  RPIs complain that the affidavit does not “detail” the reappointment process or the documentation required or establish that the credentialing materials are confidential and accessible only to committee members.

Our review of Holt’s affidavit reveals that it tracks the statutory requirements for the medical peer review committee privilege.  Holt made her affidavit on personal knowledge and detailed the committees that engage in peer review
, including the Hospital’s Ethics and Credentials Committee.  She also stated that the Ethics and Credentials Committee 
 “reviews, investigates, and/or evaluates information and/or documents regarding the physicians’ credentials, competence and/or qualifications, and creates and/or maintains this credentialing information by means of physician credentialing files in furtherance of the Hospital’s goal to improve patient care and treatment.”  She further stated that the credentialing files of Dr. Leaton and Dr. Tibbels, which were tendered to the trial court for 
in camera
 inspection, “were submitted to and received by the Ethics and Credentials Committee and have been (and continue to be) maintained by the Hospital, on behalf of the Ethics and Credentials Committee, as part of the Hospital’s peer review process.”  Holt also attached to the affidavit the Hospital’s bylaws, rules and regulations, and quality assessment plan.  

Despite their complaint that the affidavit does not “detail” the reappointment process, RPIs have pointed to no statute or case law requiring the Hospital to “detail” its reappointment process to claim the medical peer review committee privilege.
  Nevertheless, the Hospital’s bylaws attached to Holt’s affidavit do give a detailed description of the credentialing and reappointment process and the “Peer Review information” required to be submitted with applications and reapplications for appointment.

RPIs also complain that the Hospital did not show that its credentialing files are in fact kept confidential because Holt’s affidavit states only that the Hospital’s “intent” is that the “credentialing files be maintained by the Hospital as confidential and/or privileged.”  However, the affidavit also states that Holt is responsible for maintaining the credentialing files and that she has kept the confidentiality of the files.  Therefore, the uncontroverted evidence shows not only that the credentialing files are intended to be kept confidential but also that they are kept confidential.

In addition to its affidavit, the Hospital also submitted the credentialing files to the trial court for 
in camera
 review.  An affidavit that tracks statutory requirements, along with the submission of the documents at issue for 
in camera
 review, are sufficient to raise the medical 
peer review privilege.  
See, e.g.
, 
Mem’l Hosp.‒The Woodlands v. McCown
, 927 S.W.2d 1, 11-12 (Tex. 1996) (orig. proceeding) (holding that submission of affidavits and 
documents for 
in camera 
review satisfied relators’ burden of proving peer review privilege); 
Arlington Mem’l
, 
952 S.W.2d at 930
 (
holding that affidavit tracking statutory language combined with submission of the documents for 
in camera
 review established peer review privilege
).  

C.  Applicability of Medical Peer Review Committee Privilege

RPIs argue that the 
Hospital did not show that the documents at issue 
were sought out by or brought to the attention of a hospital committee for purposes of any specific investigation, review, or other deliberative proceeding.  But 
the medical peer review committee privilege covers “any communication made to a medical peer review committee,” 
Tex. Occ. Code Ann.
 § 160.007(a),
 not just communications made during the course of a specific investigation or an ongoing proceeding.  
Irving Healthcare Sys. v. Brooks
, 
927 S.W.2d 12, 19 (Tex. 1996) (orig. proceeding).  Holt’s affidavit establishes that the Hospital’s Ethics and Credentials Committee satisfies the statutory definition of a medical peer review committee and is entitled to the protection of the privilege because the committee operates under the Hospital’s written bylaws and evaluates the quality of medical and health care services or the competence of physicians
.  
See
 
Tex. Occ. Code Ann.
 § 151.002(a)
(8) (Vernon 2003).

RPIs also assert that the Hospital has failed to demonstrate that the documents at issue are not part of its business records.  Holt’s affidavit, uncontroverted by RPIs, says otherwise:

The Hospital maintains credentialing files for all physicians providing medical services at the Hospital for quality assurance, assessment, improvement and/or peer review purposes.  Only members of the Ethics and Credentials Committee (and/or assistants to or agents thereof) and/or other Committees, or the Board of Governors, or as provided for or designated by the Bylaws, have access to these credentialing files and these files are kept apart from any patient, medical or financial records.  The credentialing process, including the creation and maintenance of credentialing files, are not part of the Hospital’s regular course of business, but rather a function of the quality assurance, assessment, improvement and/or peer review process at the Hospital. 

RPIs further complain that the Hospital did not show 
that the documents “were made 
exclusively 
for the hospital’s medical peer review committee.”
  The 
medical peer review committee privilege applies to all communications with a peer review committee, even to unsolicited documents about a physician’s qualifications that are submitted without direction from the committee.  
See Irving Healthcare
, 927 S.W.2d at 19.  
The documents in the committee’s credentialing files are submitted to and used by the committee to evaluate physicians’ credentials, competence, and qualifications
 a
nd therefore qualify for the medical peer review committee privilege even if they are not made 
exclusively 
for the hospital’s medical peer review committee
.  
See id. 

On the whole, Holt’s affidavit establishes a prima facie showing that the credentialing files at issue are entitled to the claimed privileges
, and RPIs have offered no evidence to the contrary. 
 Furthermore, in
 McCown
, 927 S.W.2d at 2, and 
Brownwood Regional Hospital
, 927 S.W.2d at 27
, 
the Texas Supreme Court held that the medical peer review committee privilege applied to physicians’ credentialing files containing the same type of documents at issue in this case.
(footnote: 2)  Nevertheless, the trial court below conducted an 
in camera
 review of the documents and concluded that they were not privileged.

It is true that some documents in the Hospital’s credentialing files are public information and can be obtained from sources other than the Hospital’s credentialing files.  However, because all records of and communications to medical peer review committees are privileged
, 
the source of any otherwise discoverable documents cannot be the peer review committee’s files.  
Irving Healthcare
, 927 S.W.2d at 18.  Instead, a party must seek the documents and communications from another, nonprivileged source.  
Id.
; 
see also 
Brownwood Reg’l Hosp.
, 
927 S.W.2d at 27.

D.  Waiver

Again without citation to authority, RPIs contend that Dr. Tibbels waived any privilege applicable to documents responsive to RPIs’ request for all agreements between the Hospital and Dr. Tibbels when Dr. Tibbels failed to object in his response to a request for production of documents that RPIs served on 
him
.  The document requests at issue in this petition for writ of mandamus, however, are document requests served on the 
Hospital
, not Dr. Tibbels; RPIs do not contend that Dr. Tibbels is an agent or employee of the Hospital or is otherwise authorized to waive the Hospital’s privilege.  Furthermore, the medical peer review committee privilege cannot be waived without a written waiver executed by the committee, 
see 
Tex. Occ. Code Ann.
 § 160.007(e
),
 
and RPIs do not contend that a written waiver was ever executed.

RPIs also argue that the Hospital waived its objections to RPIs’ request for all agreements between the Hospital and Dr. Leaton by agreeing at the hearing to produce employment contracts and compensation agreements without referring to Holt’s affidavit.  However, we do not construe any agreement by the Hospital to produce employment and compensation contracts as a waiver of the privilege over the whole of its credentialing files on both defendant doctors.  Furthermore, the trial court established a procedure at the hearing for reviewing 
in camera
 responsive documents that the Hospital claimed were privileged and ruling on those documents individually, and the Hospital followed this procedure
. 

The Hospital’s affidavit, which alleged and proved the medical peer review committee privilege, along with the 
in camera 
submission of the credentialing files, shifted the burden to RPIs 
to controvert the affidavit, show that the privilege was waived, or show that the documents were made in the ordinary course of business.  
Arlington Mem’l
, 952 S.W.2d at 930.  RPIs did none of these.  Therefore, the Hospital’s credentialing files are protected by the medical peer review committee privilege as a matter of law, and the trial court abused its discretion when it 
ordered the production of these privileged documents.  
See
 
Walker,
 827 S.W.2d at 840.  

III.  CONCLUSION

Because we hold that the trial court abused its discretion in ordering production of the Hospital’s credentialing files, we conditionally grant the Hospital’s petition for writ of mandamus and order the trial court to vacate its 
March 15, 2004 order requiring production of materials that were submitted to the trial court for 
in camera
 inspection
.  A writ of mandamus will issue only if the trial court fails to comply with this opinion
.

BOB MCCOY

JUSTICE

PANEL A: LIVINGSTON, DAUPHINOT, and MCCOY, 
JJ.

DAUPHINOT, J. filed a concurring opinion.

DELIVERED: July 15, 2004

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-095-CV

IN RE WISE REGIONAL HEALTH SYSTEMS   RELATOR

F/K/A DECATUR COMMUNITY HOSPITAL

------------

ORIGINAL PROCEEDING

------------

CONCURRING OPINION

------------

I concur with the majority’s result; however, I would hold that the trial court abused its discretion for a more fundamental reason:  it ordered the production of documents not requested by RPIs.

RPIs requested all written agreements between the Hospital and each of the two doctors.  After the Hospital asserted that the only agreements were the credentialing files submitted as part of the peer review process, the conscientious trial judge examined the peer review file and removed all documents except the credentialing documents now before this court. 

The credentialing documents consist of the physicians’ requests to be allowed to practice in certain areas of medicine and the hospital’s grant or denial of the requests.  The documentation supporting the grant or denial of the requests consists merely of checkmarks.  There are no details or explanations supporting either the requests or the responses.  For these reasons, I would hold that the credentialing documents before this court, despite the Hospital’s assertions here and at the trial court, are not written agreements requested by RPIs.  

Nevertheless, as the majority points out, the medical peer review committee privilege covers any communication made to a medical peer review committee.
(footnote: 1)  Furthermore, the Texas Supreme Court has held that the credentialing process is a peer review activity subject to the privilege.
(footnote: 2)
 

Consequently, while I must agree that ordering the production of the privileged documents was an abuse of discretion, I would hold that the more fundamental abuse of discretion was the ordering of unrequested documents.
(footnote: 3) I would conditionally grant mandamus on that ground.

LEE ANN DAUPHINOT 

JUSTICE

DELIVERED: July 15, 2004

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
RPIs’ attempt to distinguish 
Brownwood
 on the grounds that it 
involved a medical committee’s initial credentialing decision, while this case involves a medical committee’s decision to renew privileges of a doctor already practicing at the Hospital, is without merit.  
See McCown
, 927 S.W.2d at 3-7 (holding that no distinction exists between proceedings of a medical peer review committee concerning the clinical privileges of a physician already on staff and proceedings on an initial application for staff privileges). 

1:
Tex. Occ. Code
 
Ann. 
§ 160.007(a) (Vernon 2003); 
Irving Healthcare Sys. v. Brooks
, 927 S.W.2d 12, 19 (Tex. 1996) (orig. proceeding).

2:
Mem’l Hosp.—The Woodlands v. McCown
, 927 S.W.2d 1, 3 (Tex. 1996) (orig. proceeding).

3:
See Gen. Motors Corp. v. Lawrence
, 651 S.W.2d 732, 734 (Tex. 1983) (orig. proceeding); 
Enos v. Baker
, 751 S.W.2d 946, 948 (Tex. App.—Houston [14
th
 Dist.] 1988, orig. proceeding).

COMMENTS AND ANNOTATIONS
Comment 1:
“Majority Opinion by Judge McCoy; Concurring Opinion by Judge Dauphinot.”