In re LIVING CENTERS OF TEXAS,
INC., d/b/a Wharton Manor,
Relator.

No. 04–0176.

Supreme Court of Texas.

Argued Sept. 9, 2004.

Decided Oct. 14, 2005.

Brandon David Mosley, Thomas C. Cowan and Tammy Savidge–Moore, Preston & Cowan, LLP, Houston, TX, for relator.

Bernard Klimist and Robert K. Piwetz, Law Office of Bernard T. Klimist, TX, Mark Anthony Davis, Law Office of Mark A. Davis, Vicotria, TX, for real party in interest.

Joanne Summerhays, Clark, Thomas, Winters & Newton, Austin, TX, for Amicus Curiae Health Care Association.

Kevin H. Dubose, Alexander Dubose Jones & Townsend LLP, Houston, TX, for Amicus Curiae Brenda and Gerald Jeffcoat.

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice MEDINA and Justice JOHNSON joined.

In this original mandamus proceeding, the relator Living Centers challenges the trial court's order to produce documents Living Centers argues are privileged. We hold the trial court abused its discretion when it determined that all documents were discoverable on the basis that the documents were not marked by Living Centers as privileged or the names of the documents, alone, did not indicate privilege. We conditionally grant the petition for writ of mandamus.

Faye Clepper was admitted to Wharton Manor Nursing Home (Living Centers) in 2001. In 2002, Ms. Clepper was transferred to the hospital where she died. Lee Cline, Ms. Clepper's survivor, sued Living Centers for medical malpractice under the Texas Wrongful Death Act and the Texas Survival Statute, alleging Ms. Clepper expired due to negligent nursing home care. After Cline served Living Centers with discovery, including requests for production, Living Centers withheld several documents, asserting the medical peer review privilege and the quality assessment and assurance (QA & A) privilege. Cline filed a motion to compel production.

To preserve and prove its privileges, Living Centers submitted four items to the trial court: a privilege log; the affidavit of Ms. Ross, the director of nursing; a representative sample of the documents to be reviewed in camera; and the QA & A Plan of the nursing home. Living Centers's privilege log began with a general statement that all listed documents were "[d]ocuments regarding the competency of the healthcare provider and the quality of care rendered." Each withheld document was also listed individually with the applicable privilege and a brief name, such as 'employee performance evaluation,' 'quality of care memo to committee,' etc. Ms. Ross's affidavit outlined the activities and responsibilities of Living Centers's medical peer review and QA & A committees and explained that the privilege log documents were of two types: (1) information and reports prepared for the committees to review; and (2) reports generated by the committees themselves. Living Centers's QA & A Plan stated that documents prepared or reviewed by the QA & A committee should be stamped with a confidentiality statement: "This report has been generated as part of the facility's quality assessment and assurance process and constitutes confidential Quality Assessment and Assurance Committee records." However, not all the documents submitted for in camera review were stamped with this required indicia.

The trial court ordered Living Centers to produce any of the in camera documents that lacked a QA & A privilege stamp, as well as any of the privilege log documents that did not have the word "committee" in the name. The court of appeals, in a per curiam opinion, denied Living Centers's request for mandamus relief.

I

■ Living Centers contends mandamus relief is appropriate when privileged documents are made discoverable by the trial court. We agree. In Texas, a person

may obtain mandamus relief from a court action only if (1) the trial court clearly abused its discretion and (2) the party requesting mandamus has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004); *In re Kuntz*, 124 S.W.3d 179, 180 (Tex.2003); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). Mandamus is appropriate to protect confidential documents from discovery. *See Mem'l Hosp.– The Woodlands v. McCown*, 927 S.W.2d 1, 12 (Tex.1996); *Barnes v. Whittington*, 751 S.W.2d 493, 496 (Tex.1988)(vacating, by mandamus, a protective order covering non-privileged documents). Since the documents at issue are alleged to be privileged, mandamus is appropriate if we conclude that they are privileged and have been improperly ordered disclosed.

## IIA

There are four privileges implicated by Living Centers: the medical committee privilege, the medical peer review committee privilege, the nursing peer review committee privilege, and the quality assessment and assurance privilege. TEX. HEALTH & SAFETY CODE § 161.032; TEX. OCC.CODE §§ 160.007, 303.006; 40 TEX. ADMIN. CODE § 19.1917 (1995)(Dep't of Aging and Disability Servs.).[1]

The medical committee privilege states: The records and proceedings of a medical committee are confidential and are not subject to court subpoena.

. . .

(f) This section and Subchapter A, Chapter 160, Occupations Code, do not

apply to records made or maintained in the regular course of business. . . .

TEX. HEALTH & SAFETY CODE § 161.032. A "medical committee" "includes any committee" of health care entities including an extended care facility. *Id.* § 161.031(a)(5). The medical peer review privilege states:

(a) Except as otherwise provided by this subtitle, each proceeding or record of a medical peer review committee is confidential, and any communication made to a medical peer review committee is privileged.

TEX. OCC.CODE § 160.007. A "medical peer review" committee is defined as:

a committee of a health care entity . . . that operates under written bylaws approved by the policy-making body or the governing board of the health care entity and is authorized to evaluate the quality of medical and health care services or the competence of physicians. . . .

*Id.* § 151.002(a)(8). "Health care entity" includes nursing homes. *Id.* § 151.002(a)(5)(B). "Medical peer review" is defined as:

"Medical peer review" or "professional review action" means the evaluation of medical and health care services, including evaluation of the qualifications of professional health care practitioners and of patient care provided by those practitioners. . . .

*Id.* § 151.002(a)(7). "Practitioner" is defined in the Occupations Code to "include physicians and surgeons." TEX. OCC.CODE § 151.002(b).[2] Section 151.052, entitled

1. Occupations Code sections 151.002, 303.001 and 303.006 were amended in 2003, but these amendments did not change the provisions applicable to this case. *See* Act of June 10, 2003, 78th Leg., R.S., ch. 202, § 1, 2003 Tex. Gen. Laws 833; Act of June 20, 2003, 78th Leg., R.S., ch. 876, § 11, 2003 Tex. Gen. Laws 2683; Act of June 20, 2003,

78th Leg., R.S., ch. 553, § 2.018, 2003 Tex. Gen. Laws 1893.

2. Chapters 151–165 are under the Subtitle "Physicians," also known as the "Medical Practice Act." Chapters 101–110 are under the previous Subtitle "Provisions Applying to

"Exemptions," specifically excludes from the coverage of this subtitle (sections 151–165) nurses, dentists, optometrists, chiropractors, podiatrists, psychologists, and physical therapists. TEX. OCC.CODE § 151.052(a). Applying both statutes shows that any "records or proceedings" of a medical committee (including a medical peer review committee) are confidential, but the privilege of the medical peer review committee also includes "any communication made to" the committee. *Id.* § 160.007(a).

This Court has analyzed the records, proceedings, and communications language of the medical committee privilege and the medical peer review committee privilege under Health & Safety Code section 161.032. *McCown,* 927 S.W.2d at 3; *Irving Healthcare Sys. v. Brooks,* 927 S.W.2d 12, 16 (Tex.1996); *In re Univ. of Tex. Health Ctr.,* 33 S.W.3d 822, 825 (Tex.2000) (per curiam).[3] In *McCown,* we discussed both the medical committee privilege and the medical peer review privilege, holding "the confidentiality provision of [the medical committee privilege] extends to initial credentialing by medical committees." *McCown,* 927 S.W.2d at 3–5. Other confidential documents under the medical peer review privilege are those "generated" by a committee or "prepared by or at the direction of the committee for committee purposes." *Id.* at 10. Privileged documents in *McCown* included the "minutes and recommendations" of medical committees, the hospital's inquiries about a physician to other sources and the sources' responses, and communications between the physician and the hospital. *Id.* at 11; *see Brownwood Reg'l Hosp. v. Eleventh Court of Appeals,* 927 S.W.2d 24, 27–28 (Tex.

1996) (per curiam) (holding the minutes of the board of trustees and the credentialing and subsequent review of physicians were privileged, but "the bylaws, rules, and regulations" of the hospital staff were not).

This Court held similarly in *Brooks,* adding that simply passing a document through a peer review committee does not make it privileged. *Brooks,* 927 S.W.2d at 17, 18. Once again discussing both the medical committee privilege and the medical peer review privilege, in *In re University of Texas Health Center,* we held that evidence that "all of [the records] were created by or at the request of the committee in connection with its evaluation of medical care" was sufficient to make all of the documents privileged. *In re Univ. of Tex. Health Ctr.,* 33 S.W.3d at 825.

A statutory business records exception to both the medical committee and medical peer review committee privileges appears in Health & Safety Code section 161.032(f). TEX. HEALTH & SAFETY CODE § 161.032(f); *see Brooks,* 927 S.W.2d at 17, 18. It states, "This section and Subchapter A, Chapter 160, Occupations Code, do not apply to records made or maintained in the regular course of business by a hospital, ... or extended care facility." *Id.* § 161.032(f). "The reference to [§ 160.007 and § 161.032] in section 161.032 is a clear signal that records should be accorded the same treatment under both statutes in determining if they are made 'in the regular course of business.'" *McCown,* 927 S.W.2d at 11. Thus, business records excepted from the privileges include a "patient's medical records" and "business and administrative files and papers apart from

Health Professions Generally." *See* TEX. OCC. CODE chs. 101–110, 151–165.

3. The pertinent language in Health & Safety Code section 161.032 and Occupations Code

section 160.007(formally art. 4495b) has not materially changed since the 1996 cases. *See* Act of May 21, 1999, 76th Leg., R.S., ch.909, §§ 5–6, 1999 Tex. Gen. Laws 3622, 3623–24.

committee deliberations." *See Brooks*, 927 S.W.2d at 18; *McCown*, 927 S.W.2d at 10.

■ While the medical privileges are important in promoting free discussion in the evaluation of health care professionals and health services, the right to evidence is also important, and therefore privileges must be strictly construed. *McCown*, 927 S.W.2d at 7 ("privileges are to be narrowly construed"); *Univ. of Penn. v. Equal Employment Opportunity Comm'n*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (privileges contravene the public's right to hear evidence and must be strictly construed).

■ Like other privileges, the medical peer review privilege will be strictly interpreted. Because the definition of "practitioner" under the Occupations Code is so narrowly drawn, we hold the medical peer review privilege, insofar as employment evaluation is concerned, only applies to physicians. *See* Tex. Occ.Code §§ 151.002(b), 151.052.

■ In addition to employment evaluation, a medical peer review committee has the broader authority "to evaluate the quality of medical and health care services...." *Id.* § 151.002(a)(8). We construe this statement to allow medical peer review committees to retrospectively review health-care services provided by nonphysicians as well, such as the administration of drugs by a nurse at the instruction of a physician. The purpose of medical peer review, as the plain language of the statutes makes clear, is protection of an evaluative process, not mere records.[4] *Cf. Jordan v. Fourth Court of Appeals*, 701 S.W.2d 644, 649 (Tex.1985) (holding that documents "not shown to be 'records and

proceedings' of a hospital committee" are discoverable); *McCown*, 927 S.W.2d at 9 ("[T]he statutory privilege attaches to an investigation, review, '*or other deliberative proceeding*' of a medical committee.") (citation omitted).

**B**

■ Separate from the medical committee and the medical peer review committee, a "nursing peer review committee" is the entity authorized to engage in nurse peer review. *See* Tex. Occ.Code § 303.001(4). To qualify as a nursing peer review committee, nurses must comprise at least three-fourths of the membership of the committee. *Id.* § 303.003(a). The nursing home may only assert the nursing peer review privilege if the committee meets the narrow and rigorous membership requirements of section 303.003(b). According to Living Centers's QA & A Plan, its nursing review committee consists of the "Administrator, Director of Nursing, the Medical Director or other designated physician, a social service representative, a dietary representative, and a Certified Nursing Assistant, at a minimum. The Administrator may assign other facility staff to the council, if appropriate." Living Centers did not prove that three-fourths of this membership consists of nurses as required by section 303.003(b); accordingly, the nursing peer review privilege does not apply in this case.

**C**

■ Nursing facility QA & A committees are required by the Texas Administrative Code. Their membership requirements do not correspond with those of nursing peer review committees. 40 Tex.

---

4. Although apparently not at issue in this case, we note that contemporaneous records of deliberations by the peer review committee itself, including discussions about prospective committee operating procedures, would fall within the medical peer review privilege. These are the "proceedings" of a peer review committee.

ADMIN. CODE § 19.1917(a)(1995)(Dep't of Aging and Disability Servs.). A nursing facility QA & A committee must consist of: "(1) the director of nursing services; (2) a physician designated by the facility; and (3) at least three other members of the facility's staff." *Id.* Because it is a committee in a health care entity and authorized to evaluate the quality of health care services, the QA & A committee also qualifies as a medical committee under the Texas Health and Safety Code, similar to a medical peer review committee. As a medical committee, QA & A committee documents are privileged, except as limited by the business records exception. TEX. HEALTH & SAFETY CODE §§ 161.031, 161.032.[5] According to Living Centers's bylaws, its QA & A committee membership meets the requirements of section 19.1917(a).

**III**

■ Living Centers argues that the various review committee privileges apply to nursing homes. We agree. Section 161.032(f) of the Health and Safety Code includes "extended care facility" in the list of facilities covered by the business records exception to the peer review privilege. TEX. HEALTH & SAFETY CODE § 161.032. We also note that "nursing home" is specifically designated as a "health care entity" under Occupations Code section 151.002(a)(5)(B). TEX. OCC. CODE § 151.002(a)(5)(b). Moreover, it was suggested in *Gulf Health Care v. Lerner* that the peer review privilege applies in the nursing home context. 932 S.W.2d 488, 488 (Tex.1996) (per curiam) (holding that nursing home privilege case should be reexamined in light of the 1996 privilege cases). Given the statutory language and our decision in *Lerner*, we hold that nursing homes are protected by the medical committee, medical peer review, and nursing peer review privileges to the same extent as hospitals.

**IV**

Living Centers argues all its privilege log documents are privileged and the privileges cover credentialing and employment of all employees, including non-physicians. We disagree.

**A**

Many of the documents at issue appear to fall outside the range of documents we have previously declared protected by the medical committee and medical peer review privileges. The categories of documents withheld by Living Centers include documents that concern licensing and investigation by state agencies of non-physicians and physicians, documents such as incident logs and reports referencing Ms. Clepper, governing body meeting minutes, personnel records including documentation of training of non-physicians and physicians, and documents used by Wharton Manor to resolve rule changes.

---

5. An additional privilege attaches to QA & A committees under the Texas Administrative Code: "Texas or the Secretary of Health and Human Services may not require disclosure of the records of the [QA & A] Committee except insofar as such disclosure is related to the compliance of the committee with the requirements of subsection (b) of this section." *Id.* § 19.1917(c). Subsection (b) requires quarterly meetings and development and implementation of plans to identify and correct quality deficiencies. *Id.* § 19.1917(b).

This administrative code privilege was adopted effective May 1, 1995, 20 Tex. Reg. 2393 (1995), and was authorized by Health and Safety Code Chapter 242, Human Resources Code, Title 2, Chapters 22 and 32, and Texas Civil Statutes, Article 4413(502), § 16.19 Tex. Reg. 8401 (1994). The privilege bolsters the administrative code's stricture that "[g]ood faith attempts by the committee to identify and correct quality deficiencies may not be used as a basis for sanctions." 40 TEX. ADMIN. CODE § 19.1917(d).

■■ The peer review privilege is intended to extend far enough to foster candid internal discussions for the purpose of making improvements in the quality of care, but not so far as to permit the concealment of "routinely accumulated information." *Whittington,* 751 S.W.2d at 496 ("the statute protects only the deliberative process"). "[T]he privilege [does] not prevent discovery of material that ha[s] been presented to a hospital committee if it [is] otherwise available and 'offered or proved by means apart from the record of the committee.'" *McCown,* 927 S.W.2d at 10 ("[T]he privilege [does] not prevent discovery of material that ha[s] been presented to a hospital committee if it [is] otherwise available and 'offered or proved by means apart from the record of the committee.'")(quoting *Texarkana Mem'l Hosp.,* 551 S.W.2d at 36).

■■ However, the source of nonprivileged material cannot be the peer review committee or any other entity or individual included within the protections of the committee privileges. Rather, a party must seek the documents and communications from a nonprivileged source. *Brooks,* 927 S.W.2d at 18. *Brooks* is properly read to privilege only the withholding of the fact that ordinary business records were reviewed by the committee, not the ordinary business records themselves. The peer review privilege protects the products of the peer review process: reports, records (including those produced for the committee's review as part of the investigative review process), and deliberations.

**B**

We now address the status of the documents in the representative sample.

**i**

■■ Cline contends Living Centers waived its claim of privilege by failing to follow its own bylaws in not stamping a QA & A privilege statement on all documents claimed to be privileged. We disagree. Under the current rules of discovery, inadvertent disclosure does not automatically waive a claim of privilege. Tex.R. Civ. P. 193.3(d) & cmt. 4. Similarly, we hold a party's inadvertent failure to utilize its own internal procedure for identifying privileged documents does not automatically waive the privilege.

■■ However, the absence of the QA & A stamp as called for in the bylaws and the reason for its absence could be relevant. Therefore, the trial court would not abuse its discretion by weighing the lack of indicia, including the reason for its absence, along with Ross's testimony, the privilege log, and the sample documents, in determining whether Living Centers met its burden to demonstrate that the documents at issue were part of the peer review process. *See In re Carbo Ceramics, Inc.,* 81 S.W.3d 369, 373 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding) (noting that under Rule 193.4(a), if the trial court requires more than affidavits or evidence from a hearing, the party asserting privilege must produce the documents for *in camera* inspection).

**ii**

Of all the sample documents submitted to this court, the only ones that may be privileged are the Incident Report QA & A logs and the Weekly Pressure Ulcer QA & A logs. As discussed, because the trial court limited its *in camera* review of the submitted documents to whether the documents were marked with a QA & A committee stamp, further review of the documents is needed. We leave the final determination of privilege for the sample Incident Report logs and Weekly Pressure Ulcer logs to the trial court.

■ The remaining documents submitted are clearly outside the privilege because: (1) they do not pertain to physicians; (2) they pertain to nurses, but Living Centers did not establish a nurse peer review committee consistent with the statutory requirement; or (3) they are contemporaneous patient records made in the ordinary course of treatment and not created for committee review, evaluation, or investigation.

■ The trial court's evidentiary determinations are reviewed for abuse of discretion and a trial court abuses its discretion when it fails to conduct an adequate *in camera* inspection of documents when such review is critical to evaluation of a privilege claim. *In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 222 (Tex. 2004)(per curiam). We find such an abuse of discretion in this case and direct the trial court to conduct further *in camera* review of those documents that may be privileged pursuant to this opinion.

## V

■ Notwithstanding the applicable privileges in this case, Cline argues that Living Centers failed to meet its burden of proof and waived its claim of privilege by providing only a sample of the documents for *in camera* inspection. We disagree. A party may assert a privilege by withholding documents and stating in its response to a discovery request: "(1) information or material responsive to the request has been withheld, (2) the request to which the information or material relates, and (3) the privilege or privileges asserted." Tex.R. Civ. P. 193.3(a). Upon request, the withholding party must serve a privilege log describing the withheld materials, without revealing privileged information, and asserting a specific privilege for each withheld item. *Id.* In addition to the privilege log, a prima facie case for the privilege must be established by testimony or affidavit. A prima facie case is required to prevent trial judges from being compelled to inspect untold numbers of documents. *In re E.I. DuPont de Nemours*, 136 S.W.3d at 223. Thereafter, if the trial court determines an *in camera* inspection is required, the court may order the documents tendered or the party asserting the privilege may, on its own initiative, tender the documents to the trial court.

In short, Texas law recognizes that a party asserting privilege may initiate its claim and establish a prima facie case of privilege by submitting evidence short of tendering each and every document. In this case, Living Centers produced a privilege log, along with a supporting affidavit, and tendered a representative sample of documents, which the trial court reviewed. Consequently, we conclude Living Centers satisfied its burden in asserting privilege by providing a representative sample of the documents at issue. This is not to say, however, that a representative sample of documents would be appropriate in every case and we leave that determination to the discretion of the trial court.

## VI

In this case, the trial court considered only the name of the documents or whether the documents were stamped with the QA & A indicia, and failed to consider other determining factors, including the purpose for which the documents were created. Upon further review, the trial court must determine: (1) whether the existing evidence establishes the privileged status of any documents without the need for an *in camera* inspection; (2) whether to conduct an *in camera* inspection of additional documents or categories of documents in light of this opinion; (3) whether the additional documents, if furnished, are

privileged; and (4) whether Living Centers, by failing to produce all documents for *in camera* inspection, failed to satisfy its burden to prove privilege. *See* TEX.R. CIV. P. 193.4; *In re DuPont de Nemours,* 136 S.W.3d at 223 (the burden to prove documents are privileged remains on the party asserting the privilege).

We conclude Living Centers is entitled to mandamus relief because the trial court abused its discretion by using only superficial indicators to deny Living Centers's privilege claim as to nearly all the documents at issue. We direct the trial court to vacate its discovery order of December 15, 2003, with respect to the requests for production and determine whether, upon further examination, any documents withheld by Living Centers may be privileged. We are confident · the trial court will promptly comply. Our writ will issue only if it does not.

Justice WILLETT did not participate in the decision.