Opinion issued April
21, 2011



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-09-00587-CV

———————————

Humble
Emergency Physicians, P.A., Appellant

V.

Memorial
Hermann Healthcare System, Inc., TeamHealth, Inc., ACS Primary Care
Physicians--Southwest, P.A., and THW Emergency Management of Houston, Inc., Appellees



 



 

On Appeal from the 295th District
Court

Harris County, Texas

Trial Court Case No. 2007-52841



 



 

MEMORANDUM OPINION

Appellant,
Humble Emergency Physicians, P.A. (“Humble”), challenges the trial court’s
rendition of summary judgment in favor of appellees, Memorial Hermann
Healthcare System, Inc. (“Memorial”), TeamHealth, Inc. (“TeamHealth”), ACS
Primary Care Physicians-Southwest, P.A. (“ACS”), and THW Emergency Management
of Houston, Inc. (“TH West”), in Humble’s suit against Memorial for breach of
fiduciary duty, breach of the duty of good faith and fair dealing, fraud by
omission, negligent misrepresentation, and constructive fraud, and in Humble’s
suit against Memorial, TeamHealth, TH West, and ACS for conspiracy.  In two issues, Humble contends that the trial
court erred in granting summary judgment in favor of Memorial, TeamHealth, TH
West, and ACS and in denying Humble’s motion to compel Memorial to produce certain
documents.[1]  

We affirm.

Background

In November
2002, Humble, a Texas professional association composed of emergency
physicians, entered into a contract with the Northeast Hospital Authority (the “Authority”), which
ran Northeast Medical Center Hospital (“Northeast”), to provide emergency
medical and administrative services at Northeast.  This contract was set to expire on December
31, 2006.  However, because Memorial was
considering a purchase of Northeast, the Authority and Humble agreed to extend
the contract for another six months until June 30, 2007.  Memorial acquired Northeast on January 1,
2007, and it assumed by assignment the contract between the Authority and
Humble, which continued to provide emergency medical services at Northeast
until the contract expired on June 30, 2007. 


After it had determined that it wanted
only one emergency services operator for its eight hospitals, Memorial, in
January 2007, formed an ad hoc committee (the “Committee”) to select the single
provider.  The Committee implemented a
competitive bid process and sent a request for proposal (“RFP”) to Humble, TeamHealth,
Emergency Consultant’s, Inc., Greater Texas Emergency Consultants, P.A., and
EmCare, all of which submitted bids and made presentations to the Committee.  In April 2007, the Committee awarded the new
contract to TeamHealth, which took over operation of Northeast’s emergency
services department on July 1, 2007.

Humble subsequently sued Memorial,
TeamHealth, TH West, and ACS, alleging that ACS had contracted with doctors and,
in turn, with TH West, a subsidiary of TeamHealth, to supply TeamHealth with
its emergency medical physicians.  Humble, in its second amended petition, the
live pleading at the time that Memorial filed its summary judgment motion, asserted
claims for breach of fiduciary duty, breach of the duty of good faith and fair
dealing, fraud by omission, constructive fraud, tortious interference with
contract, negligent misrepresentation, unfair business competition, and
conspiracy.[2]  Humble alleged that it had had a “long-standing,”
“over two decades old,” relationship with the Authority and it had placed its “complete”
and utmost trust in Northeast regarding emergency medical staffing, emergency
equipment, pharmacy facilities and personnel, and the provision of
medications.  Humble further alleged that
its own physicians were subject to Northeast’s “written Bylaws” for “Medical
Staff” and had to be credentialed by Northeast’s Credentialing Committee.  According to Humble, although it could propose
physicians to Northeast, it “had no control over the decision to admit
physicians to the Medical Staff,” which was “exclusively” managed by Northeast.

Humble further alleged that “in late
2006,” prior to the announcement of the RFP bid process, Memorial had “secretly
approached” TeamHealth about managing Northeast’s emergency department.  “Knowing that it was illegal for TeamHealth
(a for profit corporation composed of management that are not licensed
physicians in the State of Texas) to practice medicine” and “a device or
scheme” would be required “to circumvent the prohibitions on the corporate
practice of medicine,” TeamHealth, “with the full knowledge and/or consent of
Memorial,” set up two “dummy” corporations, ACS and TH West, “composed of
physicians,” to provide emergency medical doctors to Northeast. 

Although Memorial, in March 2007,
represented to Humble that the RFP process would be “fair and equal” and Humble
would have an “equal or fair chance to secure the contract,” TeamHealth,
through its “alter egos” ACS and TH West, and Memorial “entered into agreements
whereby a phony and fraudulent bidding scheme would be employed which would
‘select’ TeamHealth as the winner.”  This
“secret understanding” was “intentionally kept hidden from all other potential
bidders” so that “no matter what [Humble’s] bid was, there was never any chance
that [it] would be awarded the contract.”

Humble asserted that Northeast had a
fiduciary duty “to act in the best interests” of Humble along with a duty of good
faith and fair dealing and Memorial, when it “assumed the Northeast/Humble
contract” and “stepped into the shoes of Northeast,” “owed [Humble] the same
duties.”  According to Humble, Memorial
violated and conspired with TeamHealth to violate those duties by not “fully
disclos[ing] the true state of affairs concerning the business arrangements”
between TeamHealth and Memorial.  TeamHealth
and Memorial also conspired to induce Northeast to breach its duties to Humble.


Humble alleged that Memorial
committed fraud by violating a duty to disclose “the true relationship it had
with TeamHealth,” Memorial had preselected TeamHealth prior to the bidding
process, and Memorial committed constructive fraud and “violated Texas law and .
. . public policy” when it “conspired” with TeamHealth in “a predetermined
agreement” to defraud Humble.  Humble complained
that if it had known of the “secret understanding,” it would not have incurred
the expense of bidding on the contract.  

After Memorial, TeamHealth, and ACS
answered, generally denying Humble’s claims, Memorial, in its summary-judgment
motion, contended that neither it nor Northeast had a “formal fiduciary” or an “informal
confidential relationship” with Humble; it did not owe Humble a duty of good
faith and fair dealing; there was no conspiracy to defraud Humble; and any
alleged misrepresentations or failures to disclose information did not “rise to
the level of actionable fraud.”  Memorial
asserted that the summary-judgment evidence conclusively established that
Northeast’s contractual obligations to Humble did not create a fiduciary duty;
Humble and Northeast had no prior relationship on which a fiduciary duty could
rest; and the contract between the Authority and Humble was an “ordinary
commercial” transaction that did not create a “special relationship.”  Memorial also asserted that it could not have
committed fraud by omission because there was no “secret understanding” between
it and TeamHealth and, regardless, it had no confidential or fiduciary
relationship with Humble that created a duty to disclose such an understanding.  Memorial argued that it, as a matter of law, could
not have conspired with TeamHealth against Humble because it had negated at
least one element of each of Humble’s underlying tort claims.

Memorial attached to its motion the
affidavit of Sarah Sinclair, its Chief Patient Care Officer, who testified that
in January 2007, Memorial had decided to use a competitive bid process to
select its new emergency services provider and it had “no obligation, legal or
otherwise, to conduct the bid process.”  She
noted that Memorial invited Humble to participate in the RFP process, but
Memorial would have proceeded as it did even if Humble had opted not to
participate in the process.  Sinclair
explained that other than the statements made in the RFP package, Memorial had made
no representations to Humble “before or during the bid process, about how the
process would be conducted” and it had no “agreement” with TeamHealth to award
TeamHealth the contract.  In the RFP
documents, Memorial explained that it wanted one provider of emergency services
at its eight hospitals for “strategic and operational efficiencies.”  Memorial reserved the “right to negotiate
with one or more of the vendors in order to arrive at a final selection.”

In its response to Memorial’s
summary-judgment motion, Humble asserted that fact issues existed as to whether
Northeast and Memorial had a fiduciary relationship with Humble and whether
Memorial had made actionable misrepresentations or omissions, assumed duties,
or had a “secret and undisclosed arrangement” with TeamHealth to select
TeamHealth as the new emergency services provider “months before the bid” such
that they had “conspired together to arrive at [that] predestined result.”

Humble attached to its response the
affidavits of Dr. David Olson, President of Humble, and Dr. Mark Filley, Vice
President of Humble.  Dr. Olson testified
that Humble’s relationship with Northeast “was always a close relationship of
the utmost trust and confidence” and Humble “reposed its utmost trust in
Northeast” for the provision of “medical supplies and medicine,” the correct
types, dosages, and labeling of medicine, “proper equipment and tools of the
trade for diagnosis,” and equipment maintenance and repair in the emergency
department.  He stated that Humble’s
emergency department doctors were “Medical Staff” of Northeast and subject to
its “Bylaws,” which required them “to be credentialed” by Northeast’s
Credentialing Committee.  Dr. Olson,
himself a member of the Credentialing Committee and other Northeast committees,
stated that Humble “reposed complete trust” in the Credentialing Committee to
“insure that [Humble employed] only the most qualified [emergency department] doctors.”
 He explained that Humble had “no control
over the decision to admit physicians to the Medical Staff, and it relied
exclusively and totally on Northeast to perform its function properly.”  Also, Northeast provided and enforced “the
on-call schedule” for non-emergency physicians and specialists and “hire[d] and
train[ed] the nurses” for the emergency department.  Dr. Olson explained that neither Northeast
nor Memorial had disclosed to Humble that Memorial “had been in negotiations
with TeamHealth in October 2006”; the “true arrangement between Northeast and
Memorial”; “any plans to change the emergency department”; Memorial’s intention
“to accept bids from present service providers”; or that Memorial was not
seriously considering [Humble’s] bid.”

In his affidavit, Dr. Filley
testified that “[i]n late summer or early fall of 2006, [he] witnessed several
persons on [Northeast’s] premises who were not familiar to [him].”  When he asked the then Chief Executive
Officer of Northeast “who the people were,” she identified them “as
representatives of TeamHealth.”

After a hearing on their motions, the
trial court entered summary judgment in favor of Memorial, TeamHealth, TH West,
and ACS. 

Summary Judgment

In its first issue, Humble argues
that the trial court erred in granting summary judgment in favor of Memorial on
its claims because the nature of the relationship between Humble and Northeast
imposed fiduciary duties, which were “assumed by Memorial,” and Memorial
withheld from Humble material facts. 
Humble further argues that the trial court erred in granting summary
judgment on its conspiracy claims because Memorial, TeamHealth, TH West, and
ACS did not “conclusively negate one or more of the elements of
conspiracy.”  

 

Standard of Review

To prevail on a summary-judgment
motion, a movant has the burden of proving that it is entitled to judgment as a
matter of law and there is no genuine issue of material fact.  Tex. R.
Civ. P. 166a(c); Cathey v. Booth,
900 S.W.2d 339, 341 (Tex. 1995).  When a
defendant moves for summary judgment, it must either (1) disprove at least one
essential element of the plaintiff’s cause of action or (2) plead and
conclusively establish each essential element of its affirmative defense,
thereby defeating the plaintiff’s cause of action.  Cathey,
900 S.W.2d at 341; Yazdchi v. Bank One,
Tex., N.A., 177 S.W.3d 399, 404 (Tex. App.—Houston [1st Dist.] 2005, pet.
denied).  When deciding whether there is
a disputed, material fact issue precluding summary judgment, evidence favorable
to the non-movant will be taken as true.  Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985).  Every reasonable inference must be indulged in
favor of the non-movant and any doubts must be resolved in its favor.  Id.
at 549.

Breach of Fiduciary Duty

Humble asserts that Memorial owed it fiduciary
duties based on Humble’s “long and confidential relationship” with Northeast,
which Memorial “assumed.”  Humble argues that
Memorial breached its duties by failing to disclose that it had, before sending
the RFP to Humble, pre-selected TeamHealth as its emergency services provider. 

A fiduciary relationship exists when
one is “under a duty to act for or give advice for the benefit of another upon
matters within the scope of the relation.” 
Tex. Bank and Trust Co. v. Moore,
595 S.W.2d 502, 507 (Tex. 1980) (quoting Restatement
(Second) of Torts § 874 cmt. a (1979)).  A fiduciary duty typically requires one party
to place the interests of another party ahead of his own.  Crim
Truck & Tractor Co. v. Navistar Int’l Transp. Corp., 823 S.W.2d 591,
594 (Tex. 1992).  Texas courts have acknowledged
that certain “formal” relationships create fiduciary duties as a matter of law.  Id.  Such relationships include attorney to
client; trustee to beneficiary of a trust; executor to beneficiary of an
estate; spouse to spouse; partner to partner; officer and director to
corporation; agent to principal, including insurer to insured; and, in some instances,
employee to employer.  See Johnson v. Brewer & Pritchard. P.C.,
73 S.W.3d 193, 199–200 (Tex. 2002); Burrow
v. Arce, 997 S.W.2d 229, 240 (Tex. 1999); Huie v. DeShazo, 922 S.W.2d 920, 923 (Tex. 1999); Schlueter v. Schlueter, 975 S.W.2d 584,
589 (Tex. 1998); Bohatch v. Butler &
Binion, 977 S.W.2d 543, 545 (Tex. 1998); Int’l Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567, 576 (Tex.
1963). 

Additionally, certain “informal”
relationships may give rise to certain fiduciary duties.  Crim,
823 S.W.2d at 594.  Such an informal
relationship may arise when one reposes a special confidence in another who, in
equity and good conscience, is bound to act in good faith and with due regard
for the interest of the one.  Tex. Bank and Trust Co., 595 S.W.2d at
507.  Not every relationship involving a
high degree of trust and confidence, however, rises to the level of a fiduciary
relationship.  Meyer v. Cathey, 167 S.W.3d 327, 330 (Tex. 2005) (quoting Schlumberger Tech. Corp. v. Swanson, 959
S.W.2d 171, 176–177 (Tex. 1997)).  There
must be more than mere “subjective feelings” of trust and confidence to create
fiduciary duties.  Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998); Thigpen v. Locke, 363 S.W.2d 247, 253
(Tex. 1962).

Informal fiduciary relationships,
often termed “confidential relationships,” may arise “where one person trusts
in and relies upon another, whether the relation is a moral, social, domestic,
or merely personal one.”  Crim, 823 S.W.2d at 594.  Because not every relationship involving a
high degree of trust and confidence rises to the stature of a formal fiduciary
relationship, the existence of a confidential relationship is determined by the
actual facts regarding the relationship. 
Thigpen, 363 S.W.2d at
253.  The law recognizes the existence of
confidential relationships in those situations where “influence has been
acquired and abused, in which confidence has been reposed and betrayed.”  Crim,
823 S.W.2d at 594 (quoting Tex. Bank and
Trust Co., 595 S.W.2d at 507). 

Generally, the fact that one party to
a business transaction trusts another and relies upon the other party’s promise
to perform a contract does not give rise to a confidential relationship.  Id.
 “[T]o give full force to contracts,” courts
do not recognize fiduciary relationships in business transactions “lightly.”  Meyer,
167 S.W.3d at 331.  In every contract
there is an “element of confidence” that each party will perform his
obligations under the contract.  Crim, 823 S.W.2d at 595.  However, the mere fact that parties have a
long-term relationship is no evidence of a confidential relationship.  Id.;
Thigpen, 353 S.W.2d at 253.  To impose an informal fiduciary duty in a
business transaction, the special relationship of trust and confidence “must
exist prior to, and apart from, the agreement made the basis of the suit.”  Schlumberger
Tech. Corp., 959 S.W.2d at 177.  

Here, Dr. Olson testified that Humble
had a “long-standing trust” in Northeast to provide medical supplies,
medicines, equipment, tools, credentialing, and training — essentially for all “matters
critical to patient care and well-being.” 
From this, Humble concludes that Humble and Northeast had “the type of
relationship that rises to the level of a fiduciary relationship.”  

The contract between the Authority
and Humble provided that Humble would provide “the services of physicians, physician
assistants, and/or nurse practitioners to provide necessary medical care to
patients presenting to [Northeast’s] Emergency Department . . . for diagnosis
and treatment.”  Humble would “retain[]
duly licensed physicians” to provide emergency medical services under the
contract and these physicians had to be credentialed by the Authority, join
Northeast’s Medical Staff, and agree to be bound by the Bylaws applying to
Medical Staff.  Humble was required to
designate one of its physicians to the Credentialing Committee.  The Authority was required to “provide such
facilities, equipment, supplies, utilities, janitorial, laundry, and other
support services necessary for the emergency department,” but it had “no right
of control or direction with respect to such means, methods, or judgments [of Humble’s
physicians in performing their duties], or with respect to the details of
professional services involving clinical judgment.”

Taking as true the testimony of Dr.
Olson that Humble had placed its trust and confidence in Northeast to supply medicines,
equipment, maintenance, nursing staff, and credentialing, there are no facts to
indicate that any such trust and confidence went beyond that of parties in a
mutually beneficial contractual relationship.  Humble presented no evidence that it had a
“special relationship” with Northeast that existed apart from their contractual
agreement.  See id.  Specifically, Humble
presented no evidence to show that Northeast was ever required to put the
interests of Humble ahead of its own in regard to their relationship.  See Crim, 823 S.W.2d at 594.  In fact, it was in Northeast’s own
self-interest to ensure that its emergency department was competently staffed
and maintained.  Moreover, although
Humble “trusted” Northeast to credential the emergency physicians, Humble
proposed its own physicians for credentialing and participated in the credentialing
process.  It does not logically follow
that any specific contractual duties that Northeast had in regard to credentialing
and supplying medicine, staff, and equipment served to create fiduciary duties
in regard to Memorial’s RFP process.   

The Texas Supreme Court has refused
to recognize fiduciary duties in business relationships even when the evidence
reveals the existence of a prior, long-term personal relationship.  In Meyer,
the plaintiff and defendant were friends who had “worked together on other
projects for three years” prior to the projects at issue.  167 S.W.3d at 330.  The plaintiff had “relied on and trusted [the
defendant] to treat him fairly and keep accurate financial records.”  Id.  The defendant “was in charge of all aspects
of the projects” and “controlled the financing and the books.”  Id.  In holding that the defendant did not owe the
plaintiff any fiduciary duties, the supreme court found no evidence of a
“special relationship of trust and confidence” between the parties “prior to
and apart from” the agreements made the basis of the suit.  Id.
at 331.  The bottom line is that the
existence of a long-term friendship between individuals, or a long-standing
business relationship between entities, standing alone, will not transform an
arms-length business transaction into one in which fiduciary duties exist.  See id.;
Crim, 823 S.W.2d at 595.  

Here, there is simply no evidence of
any formal fiduciary relationship or informal confidential relationship between
Humble and Northeast or of any trust reposed by Humble in Northeast beyond the
ordinary trust between parties in an arms-length business transaction.  See Crim, 823 S.W.2d at 594–95.  And, even if Humble had previously reposed a
“high degree of trust and confidence” in Northeast in performing its
contractual duties, nothing about those specific contractual obligations
transformed their arms-length business relationship into a fiduciary one in
which Memorial owed Humble any fiduciary duties in regard to the RFP
process.  See Meyer, 167 S.W.3d at 331;
Crim, 823 S.W.2d at 594–95.  We hold
that neither Northeast nor Memorial had a fiduciary relationship with
Humble.  Accordingly, we further hold
that the trial court did not err in rendering summary judgment in favor of
Memorial on Humble’s claim against it for breach of fiduciary duties.  

Breach of the Duty of Good Faith and Fair Dealing

Humble’s argument that Memorial owed
it a duty to treat it “fairly and in good faith” is predicated on its assertion
that Memorial owed Humble fiduciary duties.  

A duty of good faith and fair dealing
requires parties to deal fairly with one another.  Crim,
823 S.W.2d at 594; Bank One, Tex. N.A. v.
Stewart, 967 S.W.2d 419, 442 (Tex. App.—Houston [14th Dist.] 1998, pet.
denied).  There is, however, “no general
duty of good faith and fair dealing in ordinary, arms-length commercial
transactions.”  Formosa Plastics Corp. USA v. Presidio Engs. & Contractors, Inc.,
960 S.W.2d 41, 52 (Tex. 1998).  The duty may
be imposed where a special relationship exists between the parties to a contract
that arises from “an element of trust necessary to accomplish the goals of the
undertaking” or an “imbalance of bargaining power.”  Nance
v. Resolution Trust Corp., 803 S.W.2d 323, 332–33 (Tex. App.—San Antonio 1990, writ denied); see Fed. Dep. Ins. Corp. v. Coleman, 795
S.W.2d 706, 708–09 (Tex. 1990).  For
example, a long-standing personal or social relationship can support the
imposition of a duty of good faith and fair dealing.  Nance,
803 S.W.2d at 333.  But, the mere fact
that one entity trusts and relies upon another to perform a contract or the
entities have had a long and cordial business relationship does not give rise
to a confidential relationship that would support a duty of good faith and fair
dealing.  Farah v. Mafrige & Kormanik, 927 S.W.2d 663, 675–76 (Tex. App.—Houston [1st Dist.] 1996, no writ).  

Having already held that neither
Northeast nor Memorial had a fiduciary relationship with Humble, and given the
fact there is no evidence of a “special relationship” between either Northeast
or Memorial and Humble, we further hold that the trial court did not err in
rendering summary judgment in favor of Memorial on Humble’s claims for breach
of the duty of good faith and fair dealing.

Fraud

Humble argues that “because of the
existence of a fiduciary relationship,” Memorial had a duty to fully disclose
all material facts to it regarding the RFP process.  Humble asserts that Memorial committed fraud
by omission when “Northeast, acting at Memorial’s behest, refused to disclose
material facts and when, by its own admission, Memorial ‘assumed’ the contract
with [Humble,] it continued the deception.”[3]  In its summary-judgment motion, Memorial
asserted that it made “no representations to [Humble] either before or during
the bid process apart from the information contained within the RFP”; any
representations made that were later determined to be false did “not amount to
actionable fraud”; and Memorial and Humble “did not have a confidential or
fiduciary relationship” that created in Memorial a duty to disclose to Humble
any information. 

To establish a claim for fraud, a
plaintiff must prove that the defendant made a material misrepresentation, which
the defendant knew was false or made recklessly without any knowledge of its
truth, with the intent that it should be acted upon by the plaintiff, and the
plaintiff actually relied on the misrepresentation and suffered injury.  In re FirstMerit
Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001). 


Fraud by omission is a subcategory of
fraud because an omission or non-disclosure may be as misleading as a positive
misrepresentation of fact when a party has a duty to disclose.  Mañon v. Solis, 142 S.W.3d 380, 387 (Tex. App.—Houston [14th Dist.] 2004, pet.
denied).  A failure to disclose does not
constitute fraud unless there is a duty to disclose the information.  See
Morris, 981 S.W.2d at 674; Hoggett v.
Brown, 971 S.W.2d 472, 487 (Tex. App.—Houston [14th Dist.] 1997, pet.
denied).  A duty to disclose may arise
not only when there is a confidential or fiduciary relationship, but also in
the three following situations: (1) when one voluntarily discloses information,
he has a duty to disclose the whole truth; (2) when one makes a representation,
he has a duty to disclose new information when he is aware that the new
information makes the earlier representation misleading or untrue; and (3) when
one makes a partial disclosure and conveys a false impression, he has a duty to
speak.  Anderson, Greenwood & Co. v. Martin, 44 S.W.3d 200, 212–13
(Tex. App.—Houston
[14th Dist.] 2001, pet. denied).

Constructive fraud “is the breach of
a legal or equitable duty that the law declares fraudulent because it violates
a fiduciary relationship.”  Brewer & Pritchard, P.C. v. Johnson,
7 S.W.3d 862, 869 (Tex. App.—Houston [1st Dist.] 1999), aff’d on other grounds, 73 S.W.3d 193 (Tex. 2002) (citing Stephanz v. Laird, 846 S.W.2d 895, 903 (Tex. App.—Houston [1st Dist.] 1993, writ
denied)).

In its response to Memorial’s
summary-judgment motion, Humble first asserted that Memorial owed it a
fiduciary duty and a duty of good faith and fair dealing to disclose details
about Memorial’s acquisition of Northeast, Memorial’s “discussions with
TeamHealth in October 2006,” the fact that Memorial “would accept bids from
other entities proposing to violate the law in Texas,”  TeamHealth had been “sued for attempting to
violate the corporate practice of medicine [prohibition],” and that “monies
would be paid to TeamHealth under the bid in order to secure TeamHealth’s
business.”  However, as we have already
held, Memorial did not owe a fiduciary duty or a duty of good faith and fair
dealing to Humble.  Thus, Memorial had no
duty to disclose the above information to Humble and Humble cannot, as a matter
of law, establish a claim against Memorial for constructive fraud.

Humble also asserted in its response that
Memorial had a duty to correct any false impression conveyed to Humble in a
partial disclosure of information.  See Bradford v. Vento, 48 S.W.3d 749,
755 (Tex. 2001).  However, Humble, in its
appellate briefing, agrees with Memorial that Memorial “disclosed nothing” to
Humble prior to the RFP bidding process.  Moreover, Humble simply does not refer us to
any specific disclosure of information by Memorial that would constitute such a
partial disclosure regarding the correction of a false impression.[4]  Humble has, thus, waived any argument on this
theory.  See Tex. R. App. P.
38.1.

The summary-judgment evidence
conclusively establishes that Memorial had no duty to disclose the complained
of information to Humble regarding the RFP bid process.  Accordingly, we hold that the trial court did
not err in granting Memorial summary judgment on Humble’s claims against it for
fraud, fraud by omission, and constructive fraud.  

Conspiracy

Humble argues that the trial court
erred in granting summary judgment in favor of Memorial, TeamHealth, TH West,
and ACS on Humble’s claim against them for conspiracy because the trial court
erred in granting summary judgment on Humble’s other claims and it presented
circumstantial evidence of a civil conspiracy. 


To establish a civil conspiracy, one
must prove the following: (1) a combination of two or more persons; (2) an
object to be accomplished (either an unlawful purpose or a lawful purpose by
unlawful means); (3) a meeting of the minds on the object or course of action;
(4) one or more unlawful, overt acts; and (5) damages as the proximate
result.  Morris, 981 S.W.2d at 675.  Civil
conspiracy is considered a derivative tort because a defendant’s liability
depends upon its participation in some underlying tort for which the plaintiff
seeks to hold the defendant liable.  Tilton v. Marshall, 925 S.W.2d 672, 681
(Tex.1996); Miller v. Raytheon Aircraft
Co., 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  

Having already held that the trial
court did not err in granting summary judgment against Humble on its underlying
tort claims, Humble’s derivative civil conspiracy claim against Memorial,
TeamHealth, TH West, and ACS fails as a matter of law.  See Tilton,
925 S.W.2d at 681.  Accordingly, we hold
that the trial court did not err in granting summary judgment in favor of
Memorial, TeamHealth, TH West, and ACS on Humble’s conspiracy claim. 

We overrule Humble’s first issue.

Motion to Compel

In its second issue, Humble argues
that the trial court erred in not ordering the production of the RFP bid
submissions and the contracts between Memorial and TeamHealth on the ground
that they are “privileged” because the “medical peer review committee
privilege”[5]
is not applicable to these documents. 
Humble asserts that the documents are “clearly relevant” to its claim
that “it was induced into a fraudulent bidding process, [and] expended tens of
thousands of dollars to submit a bid, only to have the bid awarded to a company
that was engaged in an illegal scheme to avoid the corporate practice of
medicine.”  

We review a trial court’s discovery
rulings for an abuse of discretion.  In re Colonial Pipeline Co., 968 S.W.2d
938, 941 (Tex. 1998) (orig. proceeding); Austin
v. Countrywide Homes Loans, 261 S.W.3d 68, 75 (Tex. App.—Houston [1st Dist.] 2008, pet.
denied).  A trial court abuses its
discretion if it “issues a discovery order that is arbitrary and unreasonable,
or without reference to guiding rules and principles.”  In re BP
Prods. N. Am., Inc., 263 S.W.3d 106, 111 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding).
 To reverse a trial court’s ruling on a
motion to compel, an appellant must demonstrate not only that the trial court
abused its discretion, but also that the erroneous discovery order probably
caused the rendition of an improper judgment.  See Tex. R. App. P. 44.1(a); Austin, 261 S.W.3d at 75.

In its second motion to compel,
Humble asserted that the “medical peer review committee privilege” was
inapplicable to its requests for the RFP bid submissions and the contracts
between Memorial and TeamHealth.  See Tex.
Occ. Code. Ann. § 160.007 (Vernon 2004). 
Humble claimed that these documents were relevant or would lead to the
discovery of information relevant to its allegations that “a prior relationship
existed between [Memorial and TeamHealth],” “Memorial was aware that TeamHealth
was going to violate Texas law” and that the bid process “was a fait complete.” 

Memorial responded that it was
asserting the “medical committee privilege,” not the “medical peer review
committee privilege,” regarding Humble’s request for the other bid submissions.
 See
Tex. Health & Safety Code Ann. §§ 161.031,
161.032 (Vernon 2010).  Memorial attached
to its response the affidavit of Sarah Sinclair, the Chief Patient Officer for
Memorial, who testified that Memorial formed the Committee in January 2007 to
“evaluat[e] and choos[e] a single entity to manage [its] eight area emergency
departments.”  The Committee chose to
“conduct a bid process, using [the RFP]” and identified “five different
entities” to participate in the bid process. 
The Committee “met several times . . . to discuss the process, the bids
received, the presentation of bids, and other issues related to the evaluation
of the bidders and the eventual selection of TeamHealth.”  The Committee created or collected the RFP bid
submissions and “supplemental information related thereto,” the “bids received
[from] each of the five prospective bidders,” and “evaluations and notes
related to bids and presentations.”  All
of these documents “were prepared by, or requested by the [C]ommittee in the
exercise of proper committee functions and were only used by the [C]ommittee to
further those functions.”  The documents
“were not created or maintained in the regular course of business” but “for the
express purpose of assisting the [C]ommittee in its endeavors related to the
evaluation and choice of a new management entity” for its eight emergency
departments. 

Although Memorial asserted that the
contracts between itself and TeamHealth were not relevant to whether the RFP bidding
process was fraudulent, Sinclair, in her affidavit, did not address this
assertion.  And Memorial produced no
other evidence to support its assertion. 
However, it did submit the contract, along with the other RFP bid
submissions, for an in camera inspection by the trial court.

The RFP Bid Submissions

The “medical committee privilege” protects
the “records and proceedings of a medical committee,” including those of an ad
hoc committee of a hospital formed to “conduct a specific investigation.”  See id.  The privilege extends to “records,
information, or reports” of a medical committee and those provided to a medical
committee if “used in the exercise of proper committee functions,” but it does
not extend to “records made or maintained in the regular course of business by
a hospital” or that are available from other sources.  Id.
§ 161.031(c), (d), (f); In re Living Ctrs.
of Tex., Inc., 175 S.W.3d 253, 260
(Tex. 2005) (citing Mem’l Hosp.-The
Woodlands v. McCown, 927 S.W.2d 1, 10 (Tex. 1996)).  The privilege covers documents “generated” by
a committee or “prepared by or at the direction of the committee for committee
purposes,” including the “minutes and recommendations” of the committee and
“any communication made to the committee.”  In re Living
Ctrs., 175 S.W.3d at 257 (citing McCown,
927 S.W.2d at 10–11).  Balancing the
right to evidence against the policy favoring promoting free discussion in the
evaluation of health services, we strictly construe the medical committee
privilege.  Id. at 258.

The party seeking to limit discovery
by asserting the medical committee privilege has the burden of proof.  In re
E.I. DuPont de Nemours & Co., 136 S.W.3d 218, 223 (Tex. 2004).  A privilege log and accompanying affidavit,
which describe the records and aver that the records were prepared for the
committee and not kept with patient or financial records, are generally
sufficient to prove the application of the privilege.  In re
Living Ctrs., 175 S.W.3d at 261. 
When the party asserting a privilege makes a prima facie showing of
privilege and tenders documents to the trial court, the trial court, upon
request, must conduct an in camera inspection of those documents before
deciding to compel production.  Tex. R. Civ. P. 193.4(a); In re E.I. Dupont, 136 S.W.3d at 223.

Here, Sinclair testified that
Memorial created the ad hoc Committee for the purpose of selecting an emergency
services provider for its eight hospitals and Humble made no objection to
Sinclair’s testimony.  Therefore, we conclude
that Sinclair’s affidavit testimony was sufficient to establish a prima facie
showing that the RFP bid submissions were entitled to protection under the
medical committee privilege because they were received by the Committee in
furtherance of the Committee’s sole function to select an emergency services
provider.  See Tex. Health & Safety Code Ann. §§ 161.031–.032; In re Living Ctrs., 175 S.W.3d at 261.  Accordingly, we hold that the trial court did
not err in denying Humble’s motion to compel production of the RFP bid
submissions.

The Memorial/TeamHealth Contract

In regard to the contract between
Memorial and TeamHealth, we note that a party may obtain discovery “regarding
any matter that is not privileged and is relevant to the subject matter of the
pending action” or that “appears reasonably calculated to lead to the discovery
of admissible evidence.”  Tex. R. Civ. P. 192.3(a).  The party seeking to deny production of
evidence based on relevancy, materiality, or privilege bears the burden of
asserting the specific protection against production and producing evidence to
support its assertion.  Weisel Enters., Inc. v. Curry, 718
S.W.2d 56, 58 (Tex. 1986); Peeples v. Fourth
Court of Appeals, 701 S.W.2d 635, 637 (Tex. 1985) (orig. proceeding).  If, however, after an in-camera review, the
trial court determines that the document is clearly irrelevant, no additional
proof of its nonrelevance would be required. 
Curry, 718 S.W.2d at 58 (“the
documents themselves may constitute the only evidence substantiating the claim
of privilege”); Valley Forge Ins. Co. v.
Jones, 733 S.W.2d 319, 321 (Tex. App.—Texarkana 1987, no writ) (“there may
be instances in which the documents sought are so clearly irrelevant that no
proof would be required of their nonrelevancy”).

In its response to Humble’s motion to
compel, Memorial asserted that the contract and any agreements it entered with
TeamHealth were “wholly irrelevant” to Humble’s proving a prior relationship
between Memorial and TeamHealth, an unlawful business arrangement, or a
“fraudulent” bidding process.  To support
its assertion, Memorial produced the contract for an in camera inspection by
the trial court.

Although Humble asserts that the
contract is relevant to its “unfair competition” claim, it amended its petition
to drop that claim before this appeal. 
Humble offers no explanation as to how the contract, signed by Memorial
and TeamHealth after the close of the
bidding process, is relevant to its claim that it was induced into spending
“tens of thousands of dollars” to submit a bid in a “fraudulent bidding process.”


The trial court reviewed the contract
before denying Humble’s motion to compel. 
After our own review, we conclude that the contract is not relevant and
would not likely lead to the discovery of relevant information.  Accordingly, we hold that the trial court did
not err in denying Humble’s motion to compel production of the contract between
Memorial and TeamHealth.

We overrule Humble’s second issue.

 

 

 

 

Conclusion

          We affirm the
judgment of the trial court.

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel consists of Justices Jennings, Alcala, and
Sharp. 











[1]           Although Humble also asserted a claim
against Memorial for negligent misrepresentation, Humble does not challenge the
trial court’s rendition of summary judgment on that claim.  





[2]           After
Memorial filed its summary-judgment motion, Humble amended its petition to drop
its tortious interference with contract claim. 
The trial court then rendered summary judgment in favor of Memorial,
TeamHealth, TH West, and ACS on all of Humble’s remaining claims, except for
its unfair business competition claim. 
To make the trial court’s order final and appealable, Humble again
amended its petition to drop its unfair business competition claim.  





[3]           To the extent that Humble asserts that
Memorial committed “fraud in the inducement,” we note that it offered no
argument in its summary-judgment response or in its briefing to this Court
regarding fraudulent inducement. 
Therefore, it has waived this claim.  See Tex. R. App. P. 38.1.  





[4]           Although Humble, in its fourth
amended petition, asserted that “[i]t was represented to [Humble], either
expressly or impliedly, that this was to be a fair and equal bidding process
and it was understood by [Humble] that it had an equal or fair chance to secure
the contract as every other bidder would have,” Humble offers no argument that
this assertion was a “partial disclosure,” which created a false impression
that created a duty on Memorial to disclose that it had, as alleged, already selected
TeamHealth as its emergency services provider prior to the RFP bidding
process.  Moreover, pleadings do not constitute
competent summary judgment evidence.  Laidlaw Waste Sys. (Dallas), Inc. v. City of
Wilmer, 904 S.W.2d 656, 660 (Tex. 1995).





[5]           See
Tex. Occ. Code. Ann.  § 160.007 (Vernon 2004).